CREATE (CHRISTIAN, RESEARCH, EDUCATION, ACTION, TECHNICAL ENTERPRISE), INC., Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 79–1980.

United States Court of Appeals, Fifth Circuit.

Jan. 19, 1981.

**804**

William J. Lehrfeld, Washington, D. C., for petitioner–appellant.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Act. Chief, Appellate Section, R. Russell Mather, Tax Div., U. S. Dept. of Justice, Stuart E. Seigel, Chief Counsel, Internal Revenue Service, Washington, D. C., for respondent–appellee.

Before GEE, FAY and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

We are asked in this case to determine whether the United States Tax Court has jurisdiction under I.R.C. § 7428 [1] to enter-

---

1. All references herein are to the Internal Revenue Code of 1954, as currently in effect. The quoted portions below include amendments to the Code that have become effective subsequent to the dates relevant to this appeal; none is relevant for our present purposes.

Section 7428 provides as follows:

DECLARATORY JUDGMENTS RELATING TO STATUS AND CLASSIFICATION OF ORGANIZATIONS UNDER SECTION 501(c)(3), ETC.

*(a) Creation of remedy.*–In a case of actual controversy involving–

    (1) a determination by the Secretary–

    (A) with respect to the initial qualification or continuing qualification of an organization as an organization described in section 501(c)(3) which is exempt from tax under section 501(a) or as an organization described in section 170(c)(2),

    (B) with respect to the initial classification or continuing classification of an organization as a private foundation (as defined in section 509(a)), or

    (C) with respect to the initial classification or continuing classification of an organization as a private operating foundation (as defined in section 4942(j)(3)), or

    (2) a failure by the Secretary to make a determination with respect to an issue referred to in paragraph (1),

upon the filing of an appropriate pleading, the United States Tax Court, the United States Court of Claims, or the district court of the United States for the District of Columbia may make a declaration with respect to such initial qualification or continuing qualification or with respect to such initial classification or continu-

ing classification. Any such declaration shall have the force and effect of a decision of the Tax Court or a final judgment or decree of the district court or the Court of Claims, as the case may be, and shall be reviewable as such. For purposes of this section, a determination with respect to a continuing qualification or continuing classification includes any revocation of or other change in a qualification or classification.

*(b) Limitations.*–

    *(1) Petitioner.*–A pleading may be filed under this section only by the organization the qualification or classification of which is at issue.

    *(2) Exhaustion of Administrative Remedies.*–A declaratory judgment or decree under this section shall not be issued in any proceeding unless the Tax Court, the Court of Claims, or the district court of the United States for the District of Columbia determines that the organization involved has exhausted administrative remedies available to it within the Internal Revenue Service. An organization requesting the determination of an issue referred to in subsection (a)(1) shall be deemed to have exhausted its administrative remedies with respect to a failure by the Secretary to make a determination with respect to such issue at the expiration of 270 days after the date on which the request for such determination was made if the organization has taken, in a timely manner, all reasonable steps to secure such determination.

    *(3) Time for bringing action.*–If the Secretary sends by certified or registered mail no-

tain an action, by an organization that was successful in obtaining rulings from the Internal Revenue Service to the effect that it was a public charity under I.R.C. §§ 509(a)(1) and 509(a)(3), for a declaratory judgment with respect to an issue presented in one of the organization's ruling requests which was determined adversely to the organization and which could adversely affect the organization's public charity status in the future. The Tax Court held that it was without jurisdiction under § 7428 to enter-

tain such an action and dismissed the case. We affirm.

## I. FACTS

CREATE (Christian, Research, Education, Action, Technical Enterprise), Inc. ("Create") is a non–profit corporation organized on January 26, 1972, under the laws of the State of Mississippi. In August, 1972, Create applied to the Internal Revenue Service (the "Service") under I.R.C. § 508 [2] for recognition as an exempt organi-

tice of his determination with respect to an issue referred to in subsection (a)(1) to the organization referred to in paragraph (1), no proceeding may be initiated under this section by such organization unless the pleading is filed before the 91st day after the date of such mailing.

*(c) Validation of certain contributions made during pendency of proceedings.–*

*(1) In general.–*If–

(A) the issues referred to in subsection (a)(1) involves the revocation of a determination that the organization is described in section 170(c)(2),

(B) a proceeding under this section is initiated within the time provided by subsection (b)(3), and

(C) either–

(i) a decision of the Tax Court has become final (within the meaning of section 7481), or

(ii) a judgment of the district court of the United States for the District of Columbia has been entered, or

(iii) a judgment of the Court of Claims has been entered, and such decision or judgment, as the case may be, determines that the organization was not described in section 170(c)(2),

then, notwithstanding such decision or judgment, such organization shall be treated as having been described in section 170(c)(2) for purposes of section 170 for the period beginning on the date on which the notice of the revocation was published and ending on the date on which the court first determined in such proceeding that the organization was not described in section 170(c)(2).

*(2) Limitation.–*Paragraph (1) shall apply only–

(A) with respect to individuals, and only to the extent that the aggregate of the contributions made by any individual to or for the use of the organization during the period specified in paragraph (1) does not exceed $1,000 (for this purpose treating a husband and wife as one contributor), and

(B) with respect to organizations described in section 170(c)(2) which are exempt from

tax under section 501(a) (for this purpose excluding any such organization with respect to which there is pending a proceeding to revoke the determination under section 170(c)(2)).

(3) *Exception.–*This subsection shall not apply to any individual who was responsible, in whole or in part, for the activities (or failures to act) on the part of the organization which were the basis for the revocation.

2. Section 508 provides as follows:

SPECIAL RULES WITH RESPECT TO SECTION 501(c)(3) ORGANIZATIONS

(a) *New organizations must notify Secretary that they are applying for recognition of section 501(c)(3) status.–*Except as provided in subsection (c), an organization organized after October 9, 1969, shall not be treated as an organization described in section 501(c)(3)–

(1) unless it has given notice to the Secretary, in such manner as the Secretary may by regulations prescribe, that it is applying for recognition of such status, or

(2) for any period before the giving of such notice, if such notice is given after the time prescribed by the Secretary by regulations for giving notice under this subsection.

(b) *Presumption that organizations are private foundations.–*Except as provided in subsection (c), any organization (including an organization in existence on October 9, 1969) which is described in section 501(c)(3) and which does not notify the Secretary, at such time and in such manner as the Secretary may by regulations prescribe, that it is not a private foundation shall be presumed to be a private foundation.

(c) *Exceptions.–*

(1) *Mandatory Exceptions.–*Subsections (a) and (b) shall not apply to–

(A) churches, their integrated auxiliaries, and conventions or associations of churches, or

(B) any organization which is not a private foundation (as defined in section 509(a)) and the gross receipts of which in each taxable year are normally not more than $5,000.

zation under I.R.C. § 501(c)(3)[3] and for a determination that it was not a private foundation as required by § 508(b). In December, 1972, the Service issued a private letter ruling which recognized that Create was exempt from federal income tax as an organization described in § 501(c)(3) and that contributions to Create were deductible for federal income, estate and gift tax purposes. The Service further ruled that

(2) *Exceptions by regulations.*–The Secretary may by regulations exempt (to the extent and subject to such conditions as may be prescribed in such regulations) from the provisions of subsection (a) or (b) or both–

(A) education organizations described in Section 170(b)(1)(A)(ii), and

(B) any other class of organizations with respect to which the Secretary determines that full compliance with the provisions of subsections (a) and (b) is not necessary to the efficient administration of the provisions of this title relating to private foundations.

(d) *Disallowance of certain charitable, etc., Deductions.*–

(1) *Gift or bequest to organizations subject to section 507(c) tax.*–No gift or bequest made to an organization upon which the tax provided by section 507(c) has been imposed shall be allowed as a deduction under section 170, 545(b)(2), 556(b)(2), 642(c), 2055, 2106(a)(2), or 2522, if such gift or bequest is made–

(A) by any person after notification is made under section 507(a), or

(B) by a substantial contributor (as defined in section 507(d)(2)) in his taxable year which includes the first day on which action is taken by such organization which culminates in the imposition of tax under section 507(c) and any subsequent taxable year.

(2) *Gift or bequest to taxable private foundation, section 4947 trust, etc.*–No gift or bequest made to an organization shall be allowed as a deduction under section 170, 545(b)(2), 556(b)(2), 642(c), 2055, 2106(a)(2), or 2522, if such gift or bequest is made–

(A) to a private foundation or a trust described in section 4947 in a taxable year for which it fails to meet the requirements of subsection (e) (determined without regard to subsection (e)(2)), or

(B) to any organization in a period for which it is not treated as an organization described in section 501(c)(3) by reason of subsection (a).

(3) *Exception.*–Paragraph (1) shall not apply if the entire amount of the unpaid portion of the tax imposed by section 507(c) is abated by the Secretary under section 507(g).

(e) *Governing instruments.*–

(1) *General rule.*–A private foundation shall not be exempt from taxation under section 501(a) unless its governing instrument includes provisions the effects of which are–

(A) to require its income for each taxable year to be distributed at such time and in such manner as not to subject the foundation to tax under section 4942, and

(B) to prohibit the foundation from engaging in any act of self-dealing (as defined in section 4941(d)), from retaining any excess business holdings (as defined in section 4943(c)), from making any investments in such manner as to subject the foundation to tax under section 4944, and from making any taxable expenditures (as defined in section 4945(d)).

(2) *Special rules for existing private foundations.*–In the case of any organization organized before January 1, 1970, paragraph (1) shall not apply–

(A) to any period after December 31, 1971, during the pendency of any judicial proceeding begun before January 1, 1972, by the private foundation which is necessary to reform, or to excuse such foundation from compliance with, its governing instrument or any other instrument in order to meet the requirements of paragraph (1), and

(B) to any period after the termination of any judicial proceeding described in subparagraph (A) during which its governing instrument or any other instrument does not permit it to meet the requirements of paragraph (1).

3. Section 501(c), which lists organizations exempted from taxation by § 501(a), includes the following:

(3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

Create could reasonably be expected to meet the requirements of § 509(a)(1)[4] as an organization described in I.R.C. § 170 (b)(1)(A)(vi)[5] so that, for its advanced ruling period (1973 and 1974), it would be classified as an organization which is not a private foundation. In January, 1975, at the close of Create's advance ruling period, the Service again ruled that Create was not a private foundation but classified Create on this occasion as a public charity under § 509(a)(3)[6] rather than under §§ 509(a)(1) and 170(b)(1)(A)(vi). The reason why Create was accorded non–private foundation status under § 509(a)(3) rather than under § 509(a)(1) was because it had received substantial contributions from the Community Development Foundation (the "Foundation"), a trade association exempt as a business league under I.R.C. § 501(c)(6).[7] The

4. Section 509(a) provides as follows:
   *(a) General rule.*–For purposes of this title, the term "private foundation" means a domestic or foreign organization described in section 501(c)(3) other than—
   (1) an organization described in section 170(b)(1)(A) (other than in clauses (vii) and (viii));
   (2) an organization which—
   (A) normally receives more than one–third of its support in each taxable year from any combination of—
   (i) gifts, grants, contributions, or membership fees, and
   (ii) gross receipts from admissions, sales of merchandise, performance of services, or furnishing of facilities, in an activity which is not an unrelated trade or business (within the meaning of section 513), not including such receipts from any person, or from any bureau or similar agency of a governmental unit (as described in section 170(c)(1)), in any taxable year to the extent such receipts exceed the greater of $5,000 or 1 percent of the organization's support in such taxable year,
   from persons other than disqualified persons (as defined in section 4946) with respect to the organization, from governmental units described in section 170(c)(1), or from organizations described in section 170(b)(1)(A) (other than in clauses (vii) and (viii)), and
   (B) normally receives not more than one–third of its support in each taxable year from the sum of—
   (i) gross investment income (as defined in subsection (e)) and
   (ii) the excess (if any) of the amount of the unrelated business taxable income (as defined in section 512) over the amount of the tax imposed by section 511;
   (3) an organization which—
   (A) is organized, and at all times thereafter is operated, exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more specified organizations described in paragraph (1) or (2),
   (B) is operated, supervised, or controlled by or in connection with one or more organizations described in paragraph (1) or (2), and

   (C) is not controlled directly or indirectly by one or more disqualified persons (as defined in section 4946) other than foundation managers and other than one or more organizations described in paragraph (1) or (2); and
   (4) an organization which is organized and operated exclusively for testing for public safety.
   For purposes of paragraph (3), an organization described in paragraph (2) shall be deemed to include an organization described in section 501(c)(4), (5), or (6) which would be described in paragraph (2) if it were an organization described in section 501(c)(3).

5. Section 170(b) provides in pertinent part:
   *(1) Individuals.*–In the case of an individual, the deduction provided in subsection (a) shall be limited as provided in the succeeding subparagraphs.
   *(A) General rule.*–Any charitable contribution to—

   .    .    .    .    .

   (vi) an organization referred to in subsection (c)(2) which normally receives a substantial part of its support (exclusive of income received in the exercise or performance by such organizations of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501(a)) from a governmental unit referred to in subsection (c)(1) or from direct or indirect contributions from the general public,

   .    .    .    .    .

   shall be allowed to the extent that the aggregate of such contributions does not exceed 50 percent of the taxpayer's contribution base for the taxable year.

6. *See* note 4, *supra.*

7. Section 501(c), which lists organizations exempted from taxation by § 501(a), includes the following:
   (6) Business leagues, chambers of commerce, real–estate boards, boards of trade, or professional football leagues (whether or not administering a pension fund for football players), not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual.

Service determined that contributions from the Foundation could not be treated as contributions from the general public, with the result that under Treas.Reg. § 1.170A–9 (e)(6), the Foundation's contributions in excess of 2% of Create's total support could not be counted toward the 33⅓% public support requirement imposed by § 509(a)(1). *Accord,* Rev.Rul. 255, 1977–2 C.B. 74.

In May, 1975, Create sought further review by the Service of the January, 1975 ruling. Create requested that the national office of the Service rule that it was a publicly supported § 509(a)(1) foundation because contributions from the Foundation should be treated as from the public and were therefore not subject to the 2% limitation contained in Treas.Reg. § 1.170A–9(e)(6). Create also sought § 509(a)(1) public foundation status on the ground that, even assuming that contributions from the Foundation were subject to the 2% limitation, Create's contribution from other concededly public sources exceeded the 33⅓% requirement imposed by § 509(a)(1) during the applicable period.

On December 12, 1975, the national office of the Service issued a ruling to the effect that Create qualified for the favorable status of a public charity under §§ 509(a)(1) and 170(b)(1)(A)(vi). The ruling stated that contributions by the Foundation were subject to the 2% limitation, but held that Create qualified for public status under §§ 509(a)(1) and 170(b)(1)(A)(vi) on the alternative ground that contributions from other concededly public sources exceeded the 33⅓% requirement.

On December 19, 1975, Create requested clarification of the December 12 ruling. Create asked whether the December 12 ruling meant that it was classified as a public foundation solely under § 509(a)(1), or whether the portion of its January, 1975 ruling according it public foundation status under § 509(a)(3) was still operative. On January 21, 1976, the Service responded that the December 12 ruling meant that

Create was granted favorable public foundation status under § 509(a)(3) as well as § 509(a)(1).

On April 29, 1976, the position of the Service that contributions from the Foundation were subject to the 2% limitation was confirmed by a letter from the Chief of the Exempt Organizations Technical Branch of the Service.

On June 15, 1977, Create requested that the Service reissue its letter of April 29, 1976, in order to initiate the 90–day period for filing a declaratory judgment proceeding under § 7428. In a letter dated July 22, 1977, the Service replied that the April 29, 1976 letter was not an adverse ruling " 'with respect to the initial classification or continuing classification of an organization as a private foundation,' " and was thus not subject to review under § 7428(a)(1)(B). For this reason, the ruling was not reissued.

On October 18, 1977, Create filed a petition for a declaratory judgment in the Tax Court to review the July 22, 1977 letter of the Internal Revenue Service, regarding it "as a failure to make a determination under Section 7428(a)(2), with respect to an issue referred to in Section 7428(a)(1)." The Service moved to dismiss the petition for lack of jurisdiction on the ground that there was no "actual controversy involving . . . a determination . . . with respect to the . . . continuing qualification of an organization as a private foundation," since the Service had ruled in Create's favor that it was not a private foundation under both §§ 509(a)(1) and 509(a)(3). The Tax Court, after a hearing, dismissed the petition for lack of jurisdiction on March 28, 1979. Create brings the present appeal to challenge that dismissal order.

On appeal, Create argues that the Tax Court has jurisdiction under § 7428 to hear its declaratory judgment action because the ruling that contributions from the Foundation are subject to the 2% limitation on contributions in computing Create's public financial support constituted a failure un-

der § 7428(a)(2) by the Service to make a determination with respect to an issue referred to in § 7428(a)(1)(B)–namely, the continuing classification of Create as other than a private foundation. Alternatively, Create argues that the Tax Court has such jurisdiction because the ruling constituted an adverse determination under § 7428(a)(1)(B) with respect to the continuing classification of Create as other than a private foundation.

## II. THE STATUTORY FRAMEWORK

Section 501(c)(3) allows an exemption from federal income taxes for certain charitable organizations, and § 170(c)(2) and related statutes authorize deductions for charitable contributions to such organizations. Section 509(a) provides that all organizations exempt under § 501(c)(3) are private foundations, except for certain classes of public charities. Section 508(a) severely restricts deductions for contributions to private foundations, and other provisions of the Internal Revenue Code (the "Code") apply numerous restrictions and taxes on activities of such private foundations.

Section 509(a)(1) through (4) excepts four classes of organizations from private foundation status. Section 509(a)(1) classifies as a nonprivate foundation an organization described in § 170(b)(1)(A)(i) through (vi). In particular, § 170(b)(1)(A)(vi) describes an organization which normally receives a substantial part of its support from a governmental unit or the general public–for example, by deriving at least 33⅓% of its total support from direct or indirect contributions from the general public. Section 509(a)(3) describes certain public charities which are auxiliary to §§ 509(a)(1) and 509(a)(2) organizations. The Code does not, however, treat all § 509(a) organizations in the same fashion, and it is evidently preferable, for some purposes, to have a § 509(a)(1) classification than one under § 509(a)(3).

Section 7428 was enacted in 1976 in order to assist organizations that had received adverse exemption or private foundation rulings to obtain review of such rulings. The statute was enacted as a result of the decisions of the Supreme Court in *Commissioner v. "Americans United" Inc.*, 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974), and *Bob Jones University v. Simon*, 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974). In those cases, the Court held that organizations whose rulings classifying them as § 501(c)(3) exempt organizations had been revoked must wait until tax deficiencies or assessments had been issued before seeking review in the Tax Court or in district court. In the meantime, as the Court specifically recognized, donations to the organizations would be impaired and in some cases terminated as a result of the suspension of their deductibility assurance rulings. Congress responded to this problem by enacting § 7428 which, *inter alia*, authorizes court review in a case of actual controversy involving a determination by the Service with respect to the initial classification or continuing classification of an organization as a private foundation. In addition, § 7428(c) provides for limited deductibility of contributions during the period when an organization is litigating a declaratory judgment suit respecting its charitable status. Such declaratory judgment jurisdiction is granted by § 7428(a) concomitantly to the Tax Court, the Court of Claims and the United States District Court for the District of Columbia.

## III. THE "FAILURE TO MAKE A DETERMINATION" ISSUE

Create's first argument on appeal is that the Service failed to make a determination with respect to an issue relating to the continuing classification of Create as other than a private foundation within the meaning of § 7428(a)(2). Section 7428(a)(2) speaks in terms of "a failure by the Secretary to make a determination with respect to an *issue* referred to in [§ 7428(a)(1)]." (Emphasis added.) Create's "issue" is whether certain contributions made by the Foundation are subject to the 2% limitation on contributions in computing Create's public financial support assuring its continuing

classification under §§ 509(a)(1) and 170(b)(1)(A)(vi). Create seems to be arguing that the Service's adverse determination with respect to that issue amounts to a failure to make a determination within the meaning of § 7428(a)(2). The portion of Create's brief dealing with the "failure" of the Service to make a determination states that "adverse determinations of issues which impinge upon the opportunity of charitable organizations to retain their exempt status or their foundation public charity classification should be as readily subject to judicial review as are the larger judgments directly relating to the exempt status or classification." Appellant's Brief at 13. We cannot accept Create's argument that an adverse determination on an alternative ground for a ruling constitutes a "failure ... to make a determination" within the meaning of § 7428(a)(2). Indeed, it is the fact that such a determination was made that precipitated the declaratory judgment action that is before us now.

The legislative history of § 7428 clearly indicates that the disjunctive provisions in § 7428(a)(1) and § 7428(a)(2) authorize review in a declaratory judgment action in two alternative situations: first, where the Service issues a determination (i. e., a ruling) with respect to the exempt organization status, the private foundation status or the private operating foundation status (as defined in § 4942(j)(3)) of an organization; and second, where the taxpayer requests a ruling as to whether an organization falls within one of the three classifications described in § 7428(a)(1), but the Service refuses or fails to issue a ruling on the taxpayer's classification within the prescribed 270 days. For example, the House Report states:

> The bill provides that the Federal district courts and the United States Tax Court are to have jurisdiction in the case of an actual controversy *involving a determination (or failure to make a determination)* by the Internal Revenue Service with respect to the initial or continuing qualification or classification of an organization as an exempt charitable, etc., organization (sec. 501(c)(3)), as a qualified charita-

ble contribution donee (sec. 170(c)(2)), as a private foundation (sec. 509), or as a private operating foundation (sec. 4942(j)(3)). A suit under this provision can be brought only by the organization whose qualification or status is at issue.

H.Rep.No.94–658, 94th Cong., 1st Sess. 285 (1976), *reprinted at* 1976–3 (Vol. 2) C.B. 695, 977, *and at* [1976] U.S. Code Cong. & Ad. News 2897, 3181 (emphasis added). *See also* S.Rep.No.94–938, 94th Cong., 2d Sess. 587–88 (1976), *reprinted at* 1976–3 (Vol. 3) C.B. 49, 625–26.

This interpretation of § 7428(a)(2) is borne out by the repetition of the (a)(2) statutory language in the portion of § 7428(b)(2) which establishes the 270–day waiting period for filing a petition if the Service fails to issue a requested classification ruling:

> An organization requesting the determination of an issue referred to in subsection (a)(1) shall be determined to have exhausted its administrative remedies with respect to a failure by the Secretary to make a determination with respect to such issue at the expiration of 270 days after the date on which the request for such determination was made if the organization has taken, in a timely manner, all reasonable steps to secure such determination.

I.R.C. § 7428(b)(2).

In summary, we hold that § 7428(a)(2) does not grant jurisdiction to the Tax Court to entertain Create's action for a declaratory judgment because there has been no "failure by the [Service] to make a determination" with respect to Create's private foundation classification.

## IV. THE "ACTUAL CONTROVERSY" ISSUE

Create's second argument on appeal is that the Service has made an adverse determination relating to the continuing classification of Create as other than a private foundation within the meaning of § 7428(a)(1)(B). Create states flatly that "[t]here is no question that the adverse 2%

limitation ruling directly impinges upon the 'continuing classification' of [Create]." Appellant's Brief at 14. The only information that we have about the degree to which the 2% limitation ruling impinges upon the continuing classification of Create is found in Create's petition for a declaratory judgment:

10. For purposes of computing [Create's] Section 509(a)(1) classification for 1977 and 1978, pursuant to Regulations Section 1.170A–9(e)(2) and (4), [Create's] support is as follows:

| Year | Amount |
|------|--------|
| 1973 | $ 59,893.33 |
| 1974 | 37,160.17 |
| 1975 | 46,970.71 |
| 1976 | 68,192.17 |
| TOTAL SUPPORT | $212,216.38 |

11. Under regulations, the limitation on individual contributions amounts to 2% of $212,216.38 or $4,244.33.

12. In 1973, [the Foundation] contributed $30,000, meaning that $25,755.67 of such contribution may not be used in determining [Create's] public support for 1977 and 1978 if [the Service's] regulation is correct.

Record at 7.

The effect of the Service's ruling that contributions from the Foundation are subject to the 2% limitation will obviously depend upon the level of future public support for Create from other sources. In the event that public support falls below the required minimum, resulting in action by the Service to declassify Create as a non–private foundation under § 509(a)(1), then, upon exhaustion of administrative remedies, Create will be entitled to seek recourse in the form of a declaratory judgment under § 7428(a)(1)(B). Create argues that there should be no need for Create to become declassified under § 509(a)(1) in order to seek such recourse.

The Service argues that Create has obtained favorable rulings granting non–private foundation status pursuant to §§ 509(a)(1) and 509(a)(3). Specifically, the Service argues that in Create's application for a ruling under § 509(a)(1), Create posit-

ed two alternative grounds for a favorable ruling. The first ground was that Create met the 33⅓% public support test in § 170(b)(1)(A)(vi), as incorporated in § 509(a)(1), because contributions received by Create from the Foundation should be treated as from the general public and should not be subject to the 2% limitation in Treas.Reg. § 170A–9(e)(6). The second ground was that Create met the 33⅓% public support test because, even apart from contributions from the Foundation, its public contributions were sufficient. The Service disagreed with Create's first alternative, but issued Create a favorable § 509(a)(1) ruling on the basis of its second alternative. The Service argues that only if the taxpayer receives a ruling that it is not entitled to an initial classification or a continuing classification as a non–private foundation is it entitled to seek recourse under § 7428(a)(1). We agree with the Service, although subject to a caveat that will be discussed below.

In § 7428, Congress gave the courts authority to review a determination or ruling only where it presented an "actual controversy" respecting a taxpayer's private foundation "classification." In other words, Congress in § 7428(a) established the "classification ... as a private foundation" as the administrative act which the courts could review, and § 7428(a) requires an "actual controversy" respecting such "classification." In the present case, Create requested rulings with respect to its classification as a non–private foundation under §§ 509(a)(1) and 509(a)(3) and received positive rulings. Neither Create nor the Service disputes Create's non–profit foundation classification.

This interpretation of the scope of review under § 7428(a) of classifications by the Service is supported by the legislative history of the statute. Both the House and Senate Reports suggest that the statute authorizes review only of a classification which is adverse to the taxpayer:

In order to provide an effective appeal from an Internal Revenue Service determination that an organization *is not* ex-

empt from tax, or *is not* an eligible donee for charitable contributions, or *is* a private foundation (an operating foundation or a nonoperating foundation), it has been urged that there be access to the courts through some declaratory judgment procedure.

H.Rep.No.94–658, 94th Cong., 1st Sess. 284 (1976), *reprinted at* 1976–3 (Vol. 2) C.B. 695, 976, *and at* [1976] U.S. Code Cong. & Ad. News 2897, 3180; S.Rep.No.94–938, 94th Cong., 2d Sess. 587 (1976), *reprinted at* 1976–3 (Vol. 3) C.B. 49, 625 (emphasis added). A Revenue Procedure that was issued a few months after the enactment of § 7428 similarly interpreted § 7428 to allow review only where the ruling *denies* exemption or non–profit foundation status:

A notice of final determination to which section 7428 of the Code applies is a ruling or determination letter, sent by certified or registered mail, which holds that the organization is not described in section 501(c)(3) or section 170(c)(2), is a private foundation as defined in section 509(a), or is not a private operating foundation as defined in section 4942(j)(3).

Rev.Proc. 77–21, § 7, 1977–1 C.B. 586, 587.

We agree with the Service that there are sound policy reasons for giving the terms employed in § 7428(a)(1) their natural meaning and not interpreting the statute to allow court review of an adverse holding by the Service which has no present effect on a taxpayer's classification. The Service's disagreement with a taxpayer on an alternative ground for a ruling–in this case, application of the 2% limit to the Foundation contributions–may never have any adverse effect on the taxpayer's classification as a non–private foundation. If taxpayers could seek review of a negative holding by the Service on an alternative basis for classification as a non–private foundation, even though the negative holding had no effect on the actual classification, it could give rise to a significant volume of § 7428 litigation, some of which would be needless. In this case, for example, such litigation would necessarily involve a future course of events which may never come to pass. We do not think that § 7428(a)(1) demands such an outcome.

In summary, we hold that § 7428(a)(1) does not grant jurisdiction to the Tax Court to entertain Create's action for a declaratory judgment because Create received both the non–private foundation classifications (under §§ 509(a)(1) and 509(a)(3)) that it requested and there exists at present no actual controversy between Create and the Service with respect to Create's non–private foundation status.

The one caveat we have with respect to that holding is suggested by a recent Tax Court case, *Friends of the Society of Servants of God v. Commissioner*, 75 T.C.No. 15 (Nov. 12, 1980). In that case, the organization involved. applied for a ruling to the effect that it was a non–private foundation on the ground that it was a church under §§ 509(a)(1) and 170(b)(1)(A)(i). The Service refused to rule that the organization was a church but did rule that it *could reasonably be expected* to be a publicly supported organization under §§ 509(a)(1) and 170(b)(1)(A)(vi). The organization filed suit in the Tax Court under § 7428 seeking a declaratory judgment that it was a church and was entitled to a ruling to that effect. The Service moved to dismiss for lack of jurisdiction. The Service argued that jurisdiction under § 7428(a)(1)(B) is only available where the organization has received a "fully adverse" ruling. Since the organization had received a favorable non–private foundation classification, albeit a different one than it requested, the Service argued that the Tax Court did not have jurisdiction under § 7428(a)(1)(B). The Tax Court disagreed. It began by noting that the Service had never really ruled that the organization had non–private foundation status under §§ 509(a)(1) and 170(b)(1)(A)(vi), but had in effect put the organization on a two year trial period within which it could demonstrate that it was entitled to that status. More important for our purpose, the Tax Court held that even if the Service were considered to have ruled on the organization's non–private foundation status under §§ 509(a)(1) and 170(B)(1)(A)(vi), it had

ruled adversely insofar as it imposed terms upon the organization's foundation status that would not have been imposed upon a church, which was the status that the organization had sought. For this reason, the Tax Court held that the organization had not received a favorable ruling and that the Tax Court had jurisdiction under § 7428 to consider whether the organization was entitled to a definite ruling that it was a church.

The Tax Court opinion in *Friends of the Society of Servants of God* specifically states that § 7428(a), which speaks in terms of an "actual controversy," cannot apply unless the taxpayer has received an adverse ruling. But it makes clear that the receipt of a favorable ruling on a non–private status that is a different and less advantageous status that the one which is the subject of the ruling request will not defeat § 7428 jurisdiction.

As we have held, Create received the favorable rulings which it requested under §§ 509(a)(1) and 509(a)(3) and that fact precludes Tax Court jurisdiction at this time on the Service's position on the 2% limitation applicable to the Foundation's contributions. If that limitation results in an adverse ruling in the future on Create's status under § 509(a)(1), Tax Court jurisdiction will then lie under § 7428, notwithstanding the existence at that time of a favorable ruling with respect to Create's non–private foundation status under some other, less advantageous section of the Code.

AFFIRMED.