FOUNDATION OF HUMAN UNDERSTANDING, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10431-83X.        Filed May 19, 1987.

*Joel R. Bryan*, for the petitioner.
*Joan R. Domike*, for the respondent.

OPINION

GOFFE, *Judge*: In 1965, the Internal Revenue Service issued a ruling letter which recognized that petitioner is exempt from Federal income tax as an organization de-

scribed in section 501(c)(3).[1] The Commissioner subsequently recognized petitioner as a nonprivate foundation because petitioner satisfied the requirements of a publicly supported organization described in sections 509(a)(1) and 170(b)(1)(A)(vi). Petitioner later requested a ruling to modify its exemption so that it would be recognized as a nonprivate foundation under section 509(a)(1) because it is a "church" within the meaning of section 170(b)(1)(A)(i). The Commissioner determined that petitioner is not a church, but this determination did not affect petitioner's exemption as a nonprivate foundation under sections 509(a)(1) and 170(b)(1)(A)(vi). Petitioner has challenged the determination of the Commissioner by invoking the jurisdiction of this Court for declaratory judgment pursuant to section 7428. The issue for decision is whether petitioner is a "church" within the meaning of section 170(b)(1)(A)(i).

This proceeding was submitted fully stipulated under Rule 122. Pursuant to Rule 217, the parties filed the administrative record along with a joint original and a supplemental stipulation as to its contents.[2]

The Foundation of Human Understanding (petitioner) was established in 1961 by Roy Masters as the organizational vehicle whereby his doctrine concerning meditation, salvation, emotional self-control, and man's relation to God could be spread to the world. Roy Masters has summarized his beliefs, which are based upon Judeo-Christian principles, as follows: "man is a fallen being, and hence is subject to his emotions. Through meditation and faith in Christ, it is possible for man to gain control of his emotions, to become self-disciplined, and hence a disciple of Christ." In this regard, Roy Masters has developed a particular form of meditation that is used by his followers.

On January 15, 1963, Roy Masters, Ann Masters, his wife, and Patrick C. Shields executed articles of association whereby petitioner became a nonprofit, unincorporated association organized for religious purposes under the laws of California. On May 27, 1963, petitioner was incorporated

---

[1] All section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Pursuant to Rule 217, we also granted petitioner's motion to admit certain documentary evidence not found in the administrative record.

under the nonprofit corporation law of California. The original directors were Roy Masters, Ann Masters, and John Brill. The articles of incorporation stated that the purposes for which petitioner was formed were "the promulgation of the religious, charitable, scientific, literary and educational aspects of mind over matter and spiritual health known as psychocatalysis."

On March 31, 1964, petitioner filed Form 1023, Exemption Application, requesting recognition of exemption from Federal income tax under section 501(c)(3). On December 20, 1965, the Commissioner recognized petitioner's exemption in a determination letter that characterized petitioner's purposes as religious and educational.

On August 17, 1970, petitioner filed with the IRS Form 4653, Notification Concerning Foundation Status, on which petitioner gave notice that it was not a private foundation. An organization filing Form 4653 is required to indicate the basis for its nonprivate foundation status. Petitioner indicated that it was a nonprivate foundation because it was a church under sections 509(a)(1) and 170(b)(1)(A)(i), and "An organization that normally receives no more than 1/3 of its support from gross investment income and more than 1/3 of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions * * * . Section 509(a)(2)." Despite the fact that petitioner indicated that it was a nonprivate foundation as a church under sections 509(a)(1) and 170(b)(1)(A)(i) and as an organization described in section 509(a)(2), IRS personnel noted on Form 4653 that petitioner was "An organization that normally receives a substantial part of its support from a Governmental unit or from the general public. Section 170(b)(1)(A)(vi)." Subsequently, by a letter dated October 20, 1970, the IRS informed petitioner that "Based on the information you recently submitted, we have classified you as an organization that is not a private foundation as defined in section 509(a) of the Internal Revenue Code." The letter did not inform petitioner that its nonprivate foundation status was based upon a determination that petitioner was a publicly supported organization under sections 509(a)(1) and 170(b)(1)(A)(vi), instead of a church under sections 509(a)(1) and 170(b)(1)(A)(i).

On May 15, 1972, the purpose clause of the articles of incorporation of petitioner was amended to indicate that petitioner was a church. Counsel for petitioner mailed the amendment to the articles of incorporation to the District Director of Internal Revenue. Thereupon, counsel for petitioner notified petitioner that "The Foundation is now a church."

As a result of the advice of counsel, petitioner believed that all steps necessary to change the nature of its exemption to that of a church had been completed. Accordingly, petitioner did not file information returns for the years 1973 through 1978. Ultimately, representatives of the IRS informed petitioner that it was not recognized as a church and that a formal application for such recognition would be necessary. Consequently, in 1979 petitioner prepared and filed Forms 990, Return of Organization Exempt from Income Tax, for the years 1973 through 1978 and requested a ruling that it was a church.

Although no formal application for a ruling that it qualified as a church for Federal tax purposes appears in the record, the record clearly demonstrates that petitioner's request for church status was placed under consideration by the District Director. On August 14, 1979, petitioner complied with the request of the District Director for additional information upon which to base a determination of exempt status.

On September 12, 1979, petitioner again amended its articles of incorporation to include a charitable dedication provision and to amend its purposes and powers to read as follows:

(a) Purposes of the corporation:

The sole purpose for which this church is formed is the promulgation of the religious, charitable, scientific, and literary and educational aspects of the theological concepts upon which this church was founded and is organized and operated exclusively for religious purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1954.

(b) Powers of the corporation:

The general power of this church is to engage in any activity which is in furtherance of the above-stated specific purpose.

Petitioner's application was subsequently referred to the Exempt Organizations Division of the IRS National Office.

On January 14, 1980, Roy Masters participated in a meeting in Washington, D.C., with IRS representatives regarding petitioner's exemption application. On March 13, 1980, the Commissioner issued an adverse determination letter denying petitioner's application to have its exemption classification modified to that of a church under sections 509(a)(1) and 170(b)(1)(A)(i).

On February 10, 1981, petitioner commenced an action in U.S. District Court for the Central District of California seeking declaratory relief from the adverse determination of the Commissioner. By agreement with the Assistant U.S. Attorney, the Department of Justice, and the Office of the Chief Counsel of the IRS, petitioner agreed to dismiss the District Court suit without prejudice and requested a rehearing on its church status with the Exempt Organizations Division of the IRS National Office. On November 12, 1982, the Commissioner issued an adverse determination letter pursuant to the rehearing in which the Commissioner again refused to modify the nonprivate foundation status from that of a publicly supported organization described in sections 509(a)(1) and 170(b)(1)(A)(vi) to that of a church described in sections 509(a)(1) and 170(b)(1)(A)(i). Following a protest filed by petitioner, the Commissioner issued a final adverse determination letter on February 23, 1983.

At about the time petitioner was formed, Roy Masters, using his own resources, began purchasing radio air time to present a program entitled "A Moment of Truth" during which he preached concerning his doctrine. Masters also began conducting discussion and teaching groups to educate people about his doctrine and meditation technique. After petitioner was incorporated, it continued to purchase radio air time to broadcast the pre-recorded "A Moment of Truth" on various radio stations. Petitioner also began purchasing radio air time for a live show in Los Angeles hosted by Roy Masters using a call-in format whereby listeners telephone Masters with their questions, concerns, and problems, and he responds with counseling in keeping with his doctrine and teachings. At one point these radio shows, including taped replays of the live call-in show, were broadcast 5 or 6 days a week over more than a dozen stations from New England to Hawaii. The programs are

also broadcast every night on Satellite Radio Network by local cable television in many communities throughout the country. The estimated listening audience for these programs is approximately 2 million with a regular following of 30,000.

Petitioner has published several books and pamphlets written by Roy Masters. The following is a list of the books written by Roy Masters and published by petitioner, with the respective year of publication:

| Year | Title |
| --- | --- |
| 1964 | Secret of Life and Death |
| 1970 | Sex, Sin and Salvation (Solution) |
| 1975 | How to Control Your Emotions |
| 1977 | No One Has to Die |
| 1978 | How Your Mind Can Keep You Well |
| 1979 | Life Itself is Hypnosis! THE SATAN PRINCIPLE—Self Defense Lessons to Help You Cope with Everyday Pressure |

Petitioner published the following pamphlets:

What You Should Know About Being Upset
A Guide to True Peace: The Meditations of Three Ancient Mystics, or The Excellency of Inward and Spiritual Prayer — Part 1
A Guide to True Peace: The Meditations of Three Ancient Mystics, or The Excellency of Inward and Spiritual Prayer — Part 2
How to Meditate Correctly
Stress and Suffering
Understanding Meditation

Petitioner also distributed the following tapes:

The Power of Words
Man & Woman Relationship Part II
Man & Woman Relationship Part III
Pride the Cause of Death
Man - Woman Relations
"1683"

These tapes are, for the most part, recordings of petitioner's call-in radio show.

Petitioner publishes a magazine, "The Iconoclast," with 5,200 subscribers and an estimated readership of 15,000. Each issue features writings described as follows:

[Iconoclast writings] focus on the role that illusions, false religious images, misplaced beliefs and disintegrating institutions play in our personal and inter-personal problems. * * * Once our illusions have been destroyed, the path to true religion is revealed.

More particularly, each issue contains an article by Masters, plus features that keep readers informed of petitioner's activities, as well as materials and services offered by petitioner.

Petitioner owns and operates a building in Los Angeles, which at one time housed its headquarters. The building displays the name "Foundation of Human Understanding" along with the following quote: "Where there is no insight, the people perish." The building contains facilities to record Roy Masters' radio programs and to duplicate tapes. The building also contains a meeting hall for followers of petitioner to congregate, as well as office space.

Petitioner conducts "services" at its Los Angeles building 3 or 4 times a week. These services, which are open to the public, are conducted by one of the ministers of petitioner. The conducting minister is permitted to structure the service as he chooses, ranging from highly Scriptural exhortations to practical suggestions on overcoming sin, weakness, and depression. Afterwards, followers in the congregation are allowed to and regularly do share their recent experiences concerning the Scriptures, meditation, and God. Although ministers may discuss the meditation technique prescribed by Roy Masters, meditation is performed by petitioner's followers in solitude. Ministers have performed weddings; however, the beliefs of petitioner eschew other rites such as baptism and holy communion. Although petitioner does not require its followers to disavow membership in other churches or religious organizations, many of its followers look upon petitioner as their only church.

In October 1977, petitioner opened a school for children. Although general education is provided, classwork includes religious instruction based upon the beliefs of petitioner. Petitioner also operates one or more thrift stores where donated articles are sold.

In 1979, petitioner applied for authority to transact business in the State of Oregon. In the same year,

petitioner purchased 373 acres of land near Selma, Oregon, and constructed basic living quarters and facilities for milling wood, ranching, farming, teaching, and conducting seminars and meetings. This property, called the Tall Timber Ranch, is operated by petitioner as a retreat and meeting facility. Although the number of people who have lived or worked at the Tall Timber Ranch has varied, approximately 50 persons were present in August 1981.

In 1982, petitioner purchased a church building, which formerly belonged to a Seventh Day Adventist congregation, in Grants Pass, Oregon. Petitioner relocated its headquarters to Grants Pass while retaining its building in Los Angeles. Petitioner encouraged its followers to relocate to Oregon and some did so. In Oregon, followers of petitioner attend services in the Grants Pass church, take part in activities at the Tall Timber Ranch, and are able to associate with other followers on a daily basis. Attendance at services at both Grants Pass and Los Angeles ranges from 50 to 350 people.

In 1981, petitioner had nine ordained ministers who were employed full time. The ministers included Roy Masters, his wife, Ann Masters, and his children, David Masters, Dianne Masters, and Michael Masters. In addition, there were five ministers in training. The ministerial training process is a 3-year apprenticeship under the personal tutelage of Roy Masters.

Petitioner paid the following compensation to its officers, directors, and trustees during the years 1975 through 1980:

| | Roy Masters | | Robert McQuain | | Arlyn Haun | | Ann Masters |
| Year | Salary | Parsonage | Salary | Parsonage | Salary | Parsonage | Salary |
|------|--------|-----------|--------|-----------|--------|-----------|--------|
| 1975 | $24,103 | $9,900 | $11,482 | $6,600 | $8,635 | $3,950 | $326 |
| 1976 | 30,350 | 10,650 | | | 12,036 | 4,650 | 4,680 |
| 1977 | 34,450 | 11,650 | | | 15,450 | 5,650 | 3,000 |
| 1978 | 39,000 | 13,000 | | | 19,500 | 6,500 | 13,000 |
| 1979 | 36,000 | 12,000 | | | 7,500 | 2,500 | 13,800 |
| 1980 | 36,000 | 12,000 | | | 13,800 | | |

Petitioner also paid the following compensation, presumably including salaries to ministers, along with parsonage allowances in the following amounts for the years 1975 through 1980:

| Year | Amount |
|------|--------|
| 1975 | $26,100 |
| 1976 | 33,459 |
| 1977 | 62,562 |
| 1978 | 89,099 |
| 1979 | 104,145 |
| 1980 | 150,815 |

The following table shows the total receipts reported by petitioner for the years 1971 through 1980, the amounts of contributions received, proceeds from the sale of its religious publications, and school tuition:

| Year | Total receipts | Contributions | Sales of religious publications | School tuition |
|------|----------------|---------------|--------------------------------|----------------|
| 1971 | $160,169 | $119,410 | $38,842 | |
| 1972 | 217,979 | 147,600 | 63,500 | |
| 1973 | 284,123 | 182,607 | 95,009 | |
| 1974 | 352,546 | 244,727 | 104,739 | |
| 1975 | 506,698 | 315,735 | 171,281 | |
| 1976 | 678,564 | 366,125 | 290,423 | |
| 1977 | 739,167 | 482,722 | 221,458 | |
| 1978 | 896,376 | 638,838 | 218,355 | $11,611 |
| 1979 | 1,064,014 | 668,600 | 297,962 | 41,424 |
| 1980 | 1,217,101 | 856,672 | 285,079 | 126,205 |

The figures given for receipts from sales of religious publications for the years 1979 and 1980 include receipts from the thrift stores operated by petitioner. For the years 1975 through 1978, thrift store receipts averaged more than $16,000.

During the years 1971 through 1980, contributions constituted 65.8 percent of petitioner's total receipts with the remainder derived from the sales of religious publications, school tuition, thrift store sales, interest, capital gains, and royalties. The record does not reveal what percentage of the total contributions was made by followers who attended services of petitioner in Los Angeles and Grants Pass. The record also does not reveal whether tuition income for the years 1979 and 1980 in the amounts of $41,424 and $126,205, respectively, was derived solely from operating the school for children or whether those figures also include receipts from seminars and weekend retreats conducted by petitioner.

The percentage that petitioner's broadcasting expenditures bore to total expenditures for exempt purposes for the years 1975 through 1980 was as follows:

| Year | Percent |
| --- | --- |
| 1975 | 46 |
| 1976 | 45 |
| 1977 | 48 |
| 1978 | 45 |
| 1979 | 48 |
| 1980 | 49 |

In the adverse determination letter issued on November 12, 1982, the Commissioner denied the request of petitioner to be classified as a church as follows:

In determining whether a particular organization can be considered to be a "church" within the meaning of section 170(b)(1)(A)(i) * * * the following criteria are taken into consideration: (1) a distinct legal existence; (2) a recognized creed and form of worship; (3) a definite and distinct ecclesiastical government; (4) a formal code of doctrine or discipline; (5) a distinct religious history; (6) a membership not associated with any church or denomination; (7) a complete organization of ordained ministers ministering to their congregations; (8) ordained ministers selected after completing prescribed courses of study; (9) a literature of its own; (10) established places of worship; (11) regular congregations; (12) regular religious services; (13) Sunday schools for the religious instruction of the young; and (14) schools for the preparation of its ministers. These criteria are not exclusive and are not mechanically applied, but, rather, serve as a list of some of the characteristics that may be used in determining whether an organization is a church * * * any other facts and circumstances which may bear upon an organization's claim that it is entitled to church status must also be taken into consideration.

The final adverse determination letter dated February 23, 1983, holds:

The primary purpose and function of your organization are to evangelize and promulgate your teachings and doctrines through a religious broadcasting service and a religious publications operation. While you are a religious and educational organization, you are not described in section 170(b)(1)(A)(i) because you are not a church as that term is commonly understood.

Petitioner has invoked our declaratory judgment jurisdiction under section 7428 to review the determination of the Commissioner that, for purposes of determining whether it is a private foundation under section 509(a)(1), petitioner does not qualify as a church within the meaning of section

170(b)(1)(A)(i). Careful consideration of whether this Court has jurisdiction in this case is merited.

In 1965, petitioner received an exemption from Federal income taxes as an organization described in section 501(c)(3). Following the enactment of the Tax Reform Act of 1969, Pub. L. 91-172, 83 Stat. 536, which required exempt organizations to give notice if they considered themselves to be other than a private foundation, petitioner filed Form 4653 to notify the Commissioner that it was a nonprivate foundation. The reasons claimed for nonprivate foundation status were that petitioner was a church under sections 509(a)(1) and 170(b)(1)(A)(i) and that petitioner was an organization described in section 509(a)(2). Shortly thereafter, the Commissioner notified petitioner that it was considered to be a nonprivate foundation, but he did not indicate the basis upon which nonprivate foundation status had been granted. Subsequently, petitioner twice amended its articles of incorporation to clarify its contention that it was a church, and it filed these amendments with the Commissioner.

Petitioner, believing itself to be recognized as a church, ceased filing annual information returns. See sec. 6033(a)(2)(A)(i). Petitioner did not learn that it was not recognized by the IRS as a church until after 1978. Beginning in 1979 petitioner sought a ruling that its nonprivate foundation status was based upon a determination that it was a church within the meaning of section 170(b)(1)(A)(i). Ultimately, the Commissioner, on February 23, 1983, issued a final adverse determination letter denying petitioner's request for church status under sections 509(a)(1) and 170(b)(1)(A)(i).

## Issue 1. Jurisdiction

Section 7428 authorizes review by this Court and other courts in an actual controversy involving a determination (or the failure to make a determination) by the Commissioner with respect to the initial classification or continuing classification of an organization as (1) an organization described in section 501(c)(3) or 170(c)(2), (2) a private foundation as defined in section 509(a), or a private operating foundation as defined in section 4942(j)(3). Sec. 7428(a).

Therefore, we need to decide whether there exists an "actual controversy" with respect to the ruling by the Commissioner that petitioner does not qualify as a nonprivate foundation classified as a church under sections 509(a)(1) and 170(b)(1)(A)(i).[3]

In this case, petitioner received nonprivate foundation status, but upon a less advantageous basis than desired. Looking solely to the statute, it is unclear whether there exists an actual controversy when an organization receives nonprivate foundation status under a classification different from the classification requested. It may be argued that when the Commissioner recognizes an organization as a nonprivate foundation under section 509(a), there is no actual controversy under section 7428, and this Court has no jurisdiction to review the classification which the Commissioner used to grant nonprivate foundation status. The legislative history of section 7428 fails to disclose whether our jurisdiction is limited to deciding simply whether the Commissioner correctly granted or rejected an organization's request for nonprivate foundation status, or whether we may properly hear a case challenging a ruling that grants nonprivate foundation status, albeit on a less desirable classification. See H. Rept. 94-658 (1975), 1976-3 C.B. (Vol. 2) 701, 976; S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 49, 624. Nevertheless, the cases decided under section 7428 indicate that our jurisdiction is broad enough in some instances to examine and decide the classification upon which status as a nonprivate foundation is granted. *Junaluska Assembly Housing, Inc. v. Commissioner*, 86 T.C. 1114 (1986); *Friends of the Society of Servants of God v. Commissioner*, 75 T.C. 209 (1980); see *CREATE (Christian, Research, Education, Action, Technical Enterprise), Inc. v. Commissioner*, 634 F.2d 803 (5th Cir. 1981), affg. an unreported order of this Court (hereinafter referred to as *CREATE*).

In *Friends of the Society of Servants of God v. Commissioner, supra* (hereinafter referred to as *Friends*), we were confronted with the question of whether this Court has jurisdiction to review a ruling that an organization failed to

---

[3]The petition herein was timely filed and the parties agree that petitioner has exhausted its administrative remedies as a prerequisite to this cause of action. Secs. 7428(b)(2), 7428(b)(3).

qualify as a nonprivate foundation under section 509(a)(1) as a section 170(b)(1)(A)(i) church, even though the Commissioner ruled that it could still expect to qualify as a nonprivate foundation under section 509(a)(1) by being classified as a publicly supported organization under section 170(b)(1)(A)(vi). Although we disagreed with the argument of the organization that section 7428 "grants jurisdiction in all cases where the parties disagree about some aspect of a private ruling on an organization's private foundation or tax-exempt status," we concluded there was an "actual controversy" to support jurisdiction under section 7428 because the Commissioner's ruling was adverse in important respects. 75 T.C. at 215-216.

The Commissioner's ruling in *Friends* was found to be adverse because he determined that the organization was entitled only to an advance ruling even though a definite ruling had been requested. 75 T.C. at 216-217, 219. We also found the private foundation ruling to be adverse because, by basing nonprivate foundation status on a determination that the organization was a publicly supported organization defined in section 170(b)(1)(A)(vi), it imposed terms and conditions on the organization that would not be imposed upon a church. 75 T.C. at 217, 219. For example, a publicly supported organization under section 170(b)(1)(A)(vi) must meet certain public support standards that churches need not meet. Sec. 1.170(a)-9(e), Income Tax Regs.[4] Finally, we found that the record did not support the determination of the Commissioner that the organization was a publicly supported organization under section 170(b)(1)(A)(vi). 75 T.C. at 217-219.

In *CREATE*, the Court of Appeals affirmed the decision of this Court dismissing the petition for lack of jurisdiction. CREATE, Inc., a non-profit corporation, applied for recognition as a tax-exempt organization described in section 501(c)(3) and for a ruling that it was not a private foundation. The Commissioner issued a ruling which recognized that CREATE was exempt from Federal income tax as a 501(c)(3) organization. The Commissioner also made an

---

[4] Church status is also desirable because churches are exempted from filing annual information returns. Sec. 6033(a)(2)(A)(i). IRS examinations of churches are also severely restricted. Secs. 7605(c), 7611.

advance ruling that CREATE, Inc., could reasonably expect to be classified as a nonprivate foundation under section 509(a)(1) as a publicly supported organization described in section 170(b)(1)(A)(vi). At the end of the advance ruling period, the Commissioner again ruled that CREATE, Inc., was not a private foundation. However, nonprivate foundation status was granted to CREATE, Inc., as a public charity under section 509(a)(3), rather than under sections 509(a)(1) and 170(b)(1)(A)(vi). The change in the classification for nonprivate foundation status was caused by the determination of the Commissioner that contributions received from a trade association were subject to the rule providing that to the extent the contributions exceeded 2 percent of the total support received by CREATE, Inc., they could not be counted toward the 33⅓-percent public support requirement imposed by sections 509(a)(1) and 170(b)(1)(A)(vi). Sec. 1.170A-9(e)(6), Income Tax Regs. Despite the disadvantageous treatment of the contributions from one of its major contributors, CREATE, Inc., was able to demonstrate that it still satisfied the public support requirement, at that time, through the contributions of others. Later, the Commissioner conceded that CREATE, Inc., qualified as a nonprivate foundation under sections 509(a)(1) and 170(b)(1)(A)(vi), as well as section 509(a)(3). Although CREATE, Inc., obtained nonprivate foundation status upon the classifications it had requested, it was concerned that future support from the sources considered to be public might fall below the 33⅓ percent level unless contributions from the trade association were counted in full. As a result, CREATE, Inc., filed a petition in this Court for declaratory judgment under section 7428 that contributions from the trade association were not subject to the 2-percent rule of section 1.170A-9(e)(6), Income Tax Regs. We dismissed the petition for lack of jurisdiction.

On appeal, the Court of Appeals considered whether there existed a justiciable "actual controversy" because of the ruling by the Commissioner as to the treatment of the contributions from the trade association. The Court of Appeals held that because the treatment of the contributions from the trade association had no present effect on the nonprivate foundation status of CREATE, Inc., and

because CREATE, Inc., had received nonprivate foundation status on the classifications requested (sections 509(a)(1) through 170(b)(1)(a)(vi) and 509(a)(3)), this court properly dismissed for lack of jurisdiction under section 7428. 634 F.2d at 812. See also *Urantia Foundation v. Commissioner*, 684 F.2d 521, 525 (7th Cir. 1982), affg. 77 T.C. 507 (1981). Although the Court of Appeals in *CREATE* generally agreed that receipt of a presently favorable ruling as to foundation status precludes review of the basis for the ruling, the court, citing *Friends*, acknowledged a crucial exception:

> The Tax Court opinion in *Friends of the Society of Servants of God* specifically states that §7428(a), which speaks in terms of an "actual controversy," cannot apply unless the taxpayer has received an adverse ruling. But it makes clear that the receipt of a favorable ruling on a nonprivate status that is a different and less advantageous status that [sic] the one which is the subject of the ruling request will not defeat §7428 jurisdiction. [634 F.2d at 813.]

We believe our opinion in *Friends*, cited with approval in *CREATE*, is controlling as to our jurisdiction in the instant case. In the instant case, as in *Friends*, granting nonprivate foundation status as a publicly supported organization under sections 509(a)(1) and 170(b)(1)(A)(vi) imposes requirements upon petitioner that it would not be required to meet if it were classified as a church. Accordingly, the final adverse determination as to church status was sufficiently adverse to create an "actual controversy" for purposes of our declaratory judgment jurisdiction under section 7428. *Friends of the Society of Servants of God v. Commissioner*, *supra*; see *CREATE, Inc. v. Commissioner*, *supra* at 812-813.

## Issue 2. Status as Church

The focus of our inquiry in declaratory judgment actions under section 7428 is whether the administrative determination of the Commissioner is correct. For this purpose, we assume that all facts contained in the administrative record are true. Rule 217. The role of this Court in declaratory judgment actions is "to resolve disputes as to the legal issues raised by the [Commissioner's] denial of an exemption ruling on the basis of uninvestigated statements of facts

submitted by the taxpayer in its ruling request and related papers." *Houston Lawyer Referral Service v. Commissioner*, 69 T.C. 570, 573 (1978). The burden of proof is on petitioner. *Hancock Academy of Savannah, Inc. v. Commissioner*, 69 T.C. 488, 492 (1977).

The term "church" is not defined in the Internal Revenue Code. Nor are the regulations promulgated under section 170 helpful in deciding what is a church. They simply restate the statutory language of section 170(b)(1)(A)(i).[5] Sec. 1.170A-9(a), Income Tax Regs. It seems clear, however, that Congress intended that the word "church" have a more restrictive definition than the term "religious organization." *American Guidance Foundation v. United States*, 490 F. Supp. 304, 306 (D. D.C. 1980), affd. without opinion (D.C. Cir., July 10, 1981); *Church of the Visible Intelligence that Governs the Universe v. United States*, 4 Cl. Ct. 55 (1983).

In the absence of guidance by Congress and a meaningful regulatory definition, it has been suggested that the term "church" is to be interpreted in light of the generally accepted meaning and usage of the word. *De La Salle Institute v. United States*, 195 F. Supp. 891, 903 (N.D. Cal. 1961). However, given the plurality of religious beliefs in this country, the validity of this approach is not without doubt. See *American Guidance Foundation, Inc. v. United States, supra* at 306. We can only approach this question with care for all of us are burdened with the baggage of our

---

[5]At one time the regulations under sec. 170 contained a cross-reference to the regulations under sec. 511, which define a church as follows:

(ii) The term "church" includes a religious order or a religious organization if such order or organization (a) is an integral part of a church, and (b) is engaged in carrying out the functions of a church, whether as a civil law corporation or otherwise. In determining whether a religious order or organization is an integral part of a church, consideration will be given to the degree to which it is connected with, and controlled by, such church. A religious order or organization shall be considered to be engaged in carrying out the functions of a church if its duties include the ministration of sacerdotal functions and the conduct of religious worship.* * * [Sec. 1.511-2(a)(3)(ii), Income Tax Regs.]

The Tax Reform Act of 1969 made several changes in the tax treatment of exempt organizations including repeal of the exemption given to churches from the tax on unrelated business income under sec. 511. Pub. L. 91-172, 83 Stat. 536. Following enactment of the Tax Reform Act of 1969, the Treasury proposed regulations defining "church" for purposes of sec. 170 that closely resembled the definition found in sec. 1.511-2(a)(3)(ii), Income Tax Regs. Sec. 1.170A-9(a), Proposed Income Tax Regs., 36 Fed. Reg. 9298 (May 22, 1971). Because of objections from the public, the proposed regulation defining "church" under sec. 170 was never promulgated as final. Instead the current regulation merely provides that "An organization is described in sec. 170(b)(1)(A)(i) if it is a church or a convention or association of churches." Sec. 1.170A-9(a), Income Tax Regs. See Whelan, " 'Church' in the Internal Revenue Code: The Definitional Problems," 45 Fordham L. Rev. 885, 916-917 (1977).

own unique beliefs and perspectives. We must recognize that one person's prophet is another's pariah. Consequently, we must also assiduously avoid expanding our inquiry into the merits of petitioner's beliefs or risk running afoul of First Amendment religious protections. *Parker v. Commissioner*, 365 F.2d 792, 795 (8th Cir. 1966), affg. in part, revg. in part, and remanding a Memorandum Opinion of this Court, cert. denied 385 U.S. 1026 (1967); *Unitary Mission Church of Long Island v. Commissioner*, 74 T.C. 507, 514 (1980), affd. without published opinion 647 F.2d 163 (2d Cir. 1981).

Although every church may be a religious organization, not every religious organization is a church. *Chapman v. Commissioner*, 48 T.C. 358, 363 (1967). To classify a religious organization as a church under the Internal Revenue Code, we should look to its religious purposes and, particularly, the means by which its religious purposes are accomplished. See *Chapman v. Commissioner, supra* at 367 (Tannenwald, J., concurring). "The means by which an avowedly religious purpose is accomplished separates a 'church' from other forms of religious enterprise. * * * At a minimum, a church includes a body of believers or communicants that assembles regularly in order to worship." *American Guidance Foundation, Inc v. United States, supra* at 306 (citation omitted); see *Church of Eternal Life and Liberty, Inc. v. Commissioner*, 86 T.C. 916, 924 (1986); *Chapman v. Commissioner, supra* at 367 (Tannenwald, J., concurring). When bringing people together for worship is only an incidental part of the activities of a religious organization, those limited activities are insufficient to label the entire organization a church. *De La Salle Institute v. United States, supra* at 901; see *Chapman v. Commissioner, supra* at 364.

In its efforts to identify organizations that qualify for church status the IRS has developed 14 criteria. These criteria, which were first announced in a speech by a former Commissioner,[6] were applied by the Commissioner in the instant case. The criteria are as follows:

---

[6]See Remarks of IRS Commissioner Jerome Kurtz, PLI Seventh Biennial Conference on Tax Planning (Jan. 9, 1978), reprinted in Fed. Taxes (P-H) par. 54,820 (1978).

(1) a distinct legal existence;

(2) a recognized creed and form of worship;

(3) a definite and distinct ecclesiastical government;

(4) a formal code of doctrine and discipline;

(5) a distinct religious history;

(6) a membership not associated with any other church or denomination;

(7) an organization of ordained ministers;

(8) ordained ministers selected after completing prescribed studies;

(9) a literature of its own;

(10) established places of worship;

(11) regular congregations;

(12) regular religious services;

(13) Sunday schools for religious instruction of the young; and

(14) schools for the preparation of its ministers.

[See Internal Revenue Manual 7(10)69, *Exempt Organizations Examination Guidelines Handbook* 321.3(3) (Apr. 5, 1982).]

In addition to the 14 criteria enumerated above, the IRS will consider "Any other facts and circumstances which may bear upon the organization's claim for church status." Internal Revenue Manual 7(10)69, Exempt Organizations Examination Guidelines Handbook 321.3(3) (Apr. 5, 1982).

Although this Court has not adopted these 14 criteria in deciding whether an organization is a church, other courts have expressly adopted them or at least given them the appearance of judicial imprimatur. See *Lutheran Social Service of Minn. v. United States*, 758 F.2d 1283, 1286-1287 (8th Cir. 1985), revg. and remanding 583 F. Supp. 1298 (D. Minn. 1984); *Williams Home, Inc. v. United States*, 540 F. Supp. 310, 317 (W.D. Va. 1982); *American Guidance Foundation v. United States, supra; Church of the Visible Intelligence that Governs the Universe v. United States, supra.* It is recognized that few traditional churches could meet all of the criteria. None of the criteria are considered controlling, but one court has said—

While some of these are relatively minor, others, e.g., the existence of an established congregation served by an organized ministry, the provision of regular religious services and religious education for the young, and the dissemination of a doctrinal code, are of central importance. * * * [*American Guidance Foundation, Inc. v. United States, supra* at 306.]

Although the criteria developed by the IRS are helpful in deciding what is essentially a fact question, whether petitioner is a church, we do not adopt them as a test.

Petitioner, a nonprofit corporation incorporated under the laws of California, certainly has a distinct legal existence. Although based on Judeo-Christian principles, the emphasis on emotional self-control through a specific type of meditation as the key to salvation sets petitioner apart from other recognized religions. Petitioner provides regular religious services for established congregations that are served by an organized ministry. Worship takes the form of regular meetings of regular congregations at established places of worship, petitioner's Los Angeles headquarters and the Grant Pass, Oregon, church building. These services are open to the public. Cf. *American Guidance Foundation, Inc. v. United States, supra* at 307 (husband, wife, and minor child do not constitute a church). These services were regularly conducted by the ministry for congregations consisting of 50 to 350 persons. Such activity is far from incidental. Cf. *De La Salle Institute v. United States, supra.* Although petitioner does not require its followers to reject membership in other churches, many followers consider petitioner to be their only church. Although the regular services have no set structure or liturgy, they are conducted by petitioner's ordained ministers. Ministers ordained by petitioner must serve a 3-year apprenticeship under the personal tutelage of Roy Masters. Petitioner does not maintain separate physical facilities for the preparation of its ministers. Although petitioner does not separately provide for the religious instruction of the young, such as through Sunday School classes, its school includes religious instruction as part of the general education curriculum.

Petitioner clearly has a distinct, if relatively short, religious history. Petitioner first existed as an unincorporated association formed in 1961 as the vehicle to spread the beliefs of Roy Masters, its founder. The record is unclear as to when and how Roy Masters formulated his beliefs or had them revealed to him. Nonetheless, petitioner had existed, at the time the Commissioner made his final adverse determination, for more than 20 years as an association and a corporation.

Petitioner lacks a definite ecclesiastical government. The record does not reveal how religious or doctrinal decisions are made. However as founder, Roy Masters is clearly the

leader of petitioner. He is also president of petitioner under civil corporate law. Furthermore, his ample writings illustrate fully the beliefs and doctrine of petitioner. Nonetheless, petitioner lacks a formal code of doctrine and discipline.

Petitioner does not possess all of the criteria. It does, however, possess most of the criteria to some degree. Moreover, most of the factors considered to be of central importance are satisfied. It possesses associational aspects that are much more than incidental. Despite the involvement of several members of Roy Master's family, petitioner is more than a one family church. Cf. *American Guidance Foundation, Inc. v. United States, supra* at 307. Furthermore, petitioner is not a sham organization created solely for tax purposes. See, e.g., *Davis v. Commissioner,* 81 T.C. 806 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985) (Universal Life Church case). Based upon all the facts and circumstances, we conclude that petitioner is a church within the meaning of section 170(b)(1)(A)(i).

We acknowledge that petitioner reaches far more people with its message of emotional self control through its radio broadcasts, books, pamphlets, and magazine. Petitioner's radio broadcasts have the potential to reach 2 million people with a regular listening audience of 30,000. Petitioner's magazine, the Iconoclast, has a subscription circulation of 5,200. In contrast, approximately 2,000 followers relocated to Oregon at petitioner's behest, leaving approximately that many in Los Angeles. Attendance at services at the Los Angeles and Grants Pass, Oregon, locations, ranged from 50 to 350. In financial terms, petitioner's radio broadcast and publishing efforts constitute a large percentage of petitioner's total receipts and expenditures. Nevertheless, petitioner's substantial broadcasting and publishing activities do not overshadow the other indications that petitioner is a church. The call to evangelize or otherwise spread one's religious beliefs is, undeniably, an integral part of many faiths. The fact that in this case, the religious outreach was substantial both before and after petitioner began to possess many church-like characteristics does not change our conclusion. More importantly, despite the breadth of petitioner's broadcasting and publishing efforts, its as-

sociational aspects are much more than incidental. Cf. *De La Salle Institute v. United States, supra.* We hold that petitioner has sufficient associational aspects to be considered a church. *American Guidance Foundation, Inc. v. United States, supra;* see *Church of Eternal Life and Liberty v. Commissioner, supra; Chapman v. Commissioner, supra.*

We readily acknowledge that this case presents a close question. Our conclusion is based upon the particular facts of this case. At its inception petitioner was not a church, nor did it perceive itself as such. It was granted tax-exempt status as a religious and educational organization described in section 501(c)(3). But as more people heard and began to follow the teachings of Roy Masters, petitioner began to adopt church-like characteristics. The means by which petitioner accomplished its admittedly religious purposes have developed such that we conclude that petitioner is now a church. We hasten to emphasize that by its use of the term "church," Congress must have intended a more narrow classification than that embodied by a term such as "religious organization." Despite the lack of guidance from Congress, and in the absence of a more explicit regulatory definition of the term "church," we will continue our efforts to give a distinct meaning to this statutory classification.

Based upon the foregoing,

*Decision will be entered for the petitioner.*

Reviewed by the Court.

STERRETT, SIMPSON, NIMS, SHIELDS, CLAPP, and PARR, *JJ.*, agree with the majority opinion on the jurisdictional issue.

NIMS, PARKER, WHITAKER, KÖRNER, SHIELDS, HAMBLEN, COHEN, CLAPP, SWIFT, JACOBS, WRIGHT, and PARR, *JJ.*, agree with the majority opinion on the substantive issue.

WELLS, *J.*, concurs in the result only on the substantive issue.

GERBER, *J.*, did not participate in the consideration of this opinion.

WHITAKER, *J.*, concurring: For the reasons set forth herein, I believe the majority in this case have reached the right result on jurisdiction but on an incorrect rationale.

There are two aspects to our jurisdiction in cases under section 7428. As we recognized in *Friends of the Society of Servants of God v. Commissioner*, 75 T.C. 209, 215 (1980), there must be an "actual controversy." An actual controversy exists when an exempt organization receives a favorable ruling, but upon a basis which is different from and less advantageous to the organization than that which the organization requested. *CREATE, Inc. v. Commissioner*, 634 F.2d 803 (5th Cir. 1981); *Friends of the Society of Servants of God v. Commissioner, supra.* I agree with the majority that an actual controversy exists in this case.

The second aspect of our jurisdiction is based solely upon the provisions of section 7428(a). That Code section grants jurisdiction to this Court under section 7428(a)(1)(A) as to the initial or continuing qualification of an organization described in section 501(c)(3) or in section 170(c)(2), and under section 7428(a)(1)(B) and (C) with respect to the initial or continuing classification of an organization as a private foundation or as a private operating foundation.

The real issue with which we are wrestling is whether under section 7428(a)(1)(A) we are limited to determining only whether the organization is or is not exempt or whether we can go beyond that basic qualification question and determine the nature of the organization and its basis for exemption, i.e., its status under section 501(c)(3). The majority have struggled to find jurisdiction under section 7428(a)(1)(B), based upon the reference therein to section 509(a) and the reference in section 509(a) to section 170(b)(1)(A). I disagree with this approach. I conclude that the jurisdiction granted to us in section 7428(a)(1)(B) and (C) is very narrow—to determine only private foundation or private operating foundation status. It is section 501(c)(3) which contains the broad based grant of jurisdiction.[1]

Section 501(c)(3) exempts organizations which are organized and operated "exclusively for religious, charitable,

---

[1]For present purposes I ignore the reference to sec. 170(c)(2), simply noting that a foreign organization can be exempt from tax under sec. 501(c)(3) although by reason of sec. 170(c)(2) contributions thereto would not be deductible.

scientific, testing for public safety, literary, or educational purposes, or to foster" amateur sports competitions or for the prevention of cruelty to children or animals. A number of these categories of exempt organizations have special tax attributes or burdens or both under various other provisions of the Internal Revenue Code, regulations, and rulings. For example, hospitals and educational institutions both differ from each other and from other charitable organizations in important respects. Also, there are various categories of religious organizations all of which are a special category of tax-exempt organizations. But of all exempt organizations under section 501(c)(3) a church has by far the greatest number of significant preferences. There is, thus, a singular advantage in exempt status predicated upon being a church.

There is nothing in section 7428(a) or in its legislative history which explicitly or implicitly limits our authority to determine simply that the organization is exempt or nonexempt. H. Rept. 94-658 (1975), 1976-3 C.B. (Vol. 2) 284, states that: "Accordingly, your committee has agreed to provide in this bill for a declaratory judgment procedure under which an organization can obtain a judicial determination of its own *status* as a charitable, etc., organization." (Emphasis added; fn. ref. omitted.) The Senate report uses almost identical language. S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 587. Both reports also state in their respective explanations of the proposed legislation that the new jurisdiction arises in the case of an actual controversy involving a determination "with respect to the initial or continuing *qualification or classification* of an organization" as exempt under section 501(c)(3). Both reports also state flatly that the designated courts "are to have jurisdiction to make a declaration with respect to the status of the organization." A declaration that a specific organization is exempt or nonexempt is a declaration with respect to "status" but so is a declaration that an organization is exempt *as a church*.

True, there is nothing explicit in the statute or legislative history which grants us jurisdiction to go beyond the bare determination of exempt status to the determination of the basis for the exemption. While we are a court of limited jurisdiction, there is no policy reason why, within a specific

grant of jurisdiction by the Congress, we should not construe the grant broadly instead of narrowly, especially where, as in this case, this declaratory judgment legislation was intended to be remedial, responding to the problems described by the Supreme Court in the *Americans United* and *Bob Jones* cases.[2]

The majority falls into error in predicating our jurisdiction in this case on section 7428(a)(1)(B), that is on sections 509(a)(1)(A) and 170(b)(1)(A)(i), instead of upon section 7428(a)(1)(A) or upon the section 501(c)(3) determination.[3] The fact that the ruling was apparently requested under section 509(a) does not limit this Court in its jurisdiction.[4]

It does not appear that any court has heretofore focused upon this analysis of our jurisdiction under section 7428(a)(1)(A). In *Friends*, the application requested a ruling under section 509(a)(1) on the basis that the organization was a church described in section 170(b)(1)(A)(i). We held that "petitioner may not ask for a declaratory judgment that it is a church under section 170(b)(1)(A)(i) *unless* qualification as a church has a direct bearing on petitioner's foundation status under section 509(a)." *Friends of Society of Servants of God v. Commissioner, supra* at 215-216. Finding that status as a church "directly affects" qualification as a nonprivate foundation, we concluded that we had jurisdiction under section 7428(a)(1)(B). *Friends of the Society of Servants of God v. Commissioner, supra* at 220. The question as to the scope of section 7428(a)(1)(A) was not raised in *Friends*. The decision in *CREATE* is not to the contrary. There the petitioner had received a favorable ruling under section 509(a); hence, there was no controversy as to nonprivate foundation status.

In many of the decided cases, the issue has been as to the existence of an actual controversy. For example, in *Urantia Foundation v. Commissioner*, 77 T.C. 507 (1981), affd. 684 F.2d 521 (7th Cir. 1982), we reviewed the distinctions we

---

[2]*Alexander v. "Americans United," Inc.*, 416 U.S. 752 (1974); *Bob Jones University v. Simon*, 416 U.S. 725 (1974).

[3]Parenthetically, the reference to sec. 170(b)(1)(A)(i) nowhere appears in sec. 7428. Sec. 509(a) uses the sec. 170(b)(1)(A) cross-reference simply as a shorthand way to refer to various types of organizations. It has no bearing upon our jurisdiction.

[4]Conceivably, we might have dismissed the petition here because the petitioner sought classification as a church under sec. 509(a) instead of under sec. 501(c)(3), but that would not be a jurisdictional matter.

had made in *Gladstone*[5] and *New Community*[6] and again held that we have no jurisdiction unless there is a controversy with respect to a determination dealing directly with the exemption or classification of the organization. *Urantia Foundation v. Commissioner*, 77 T.C. 507 (1981), affd. 684 F.2d 521 (7th Cir. 1982). The Court of Appeals summarized our jurisdiction in this language:

> In summary, §7428(a)(1) authorizes judicial review of IRS determinations that directly affect the tax status of a charitable organization, *New Community*. The determination must directly put in issue the organization's classification or qualification under the sections listed in §7428(a)(1)(A)-(C), and must cause sufficient adverse consequences to that organization to create an actual controversy, *CREATE, Friends of Society of Servants of God v. Commissioner*, 75 T.C. 209 (1980). [*Urantia Foundation v. Commissioner*, 684 F.2d 521, 525 (7th Cir. 1982).][7]

*Eiry Trust v. Commissioner*, 77 T.C. 1263 (1981), holds that we lack jurisdiction to determine whether the organization's income is exempt under section 115, although we concluded that we could determine whether it was a trust under section 4947(a)(1) since that issue was "inextricably related to the issues of whether the organization is qualified under section 501(c)(3) or classified as a private foundation under section 509(a)." *Eiry Trust v. Commissioner, supra* at 1267.

Some support for this broad interpretation of section 7428(a)(1)(A) is found in *Church of the New Testament, Its Members and Friends v. United States*, 783 F.2d 771 (9th Cir. 1986), in that the Court of Appeals stated that declaratory judgments may be brought under section 7428 concerning the status of an organization under section 501(c)(3) and that the appellant church was a potential petitioner in a section 7428 action because its qualification or classification was at issue. More direct authority for a broad interpretation of our jurisdiction is found in our Court-reviewed opinion in *Associated Hospital Services, Inc. v. Commissioner*, 74 T.C. 213 (1980). The petition sought a

---

[5] *J. David Gladstone Foundation v. Commissioner*, 77 T.C. 221 (1981).

[6] *New Community Sr. Citizens Housing Corp. v. Commissioner*, 72 T.C. 372 (1979).

[7] An argument can be made on the basis of this language as well as similar language in the legislative history that we can under sec. 7428(a)(1)(A) determine both "qualification" and "classification," i.e., classify various types of exempt organizations. However, I prefer my broad analysis of sec. 501(c)(3). It is also worth noting that respondent's determinations of exempt status normally include a classification determination.

declaration of exemption under section 501(c)(3). We discussed the scope of section 501(c) and extensively analyzed section 502, concluding that the petitioner was a feeder organization under section 502 and, therefore, not exempt under section 501(c)(3). Thus, in the course of determining nonexempt status, we clearly classified the organization under the Internal Revenue Code.

Arguably, as Judge Williams points out in his dissent, *Ohio County & Independent Agriculture Societies v. Commissioner*, 610 F.2d 448 (6th Cir. 1979), disapproves the majority's analysis, since the Sixth Circuit affirmed our conclusion (in an unreported order) that we would not determine whether the organization was described in section 170(b)(1)(A)(6), i.e., a governmental unit. Respondent had long recognized the organization to be exempt under section 501(c)(3) *as an educational organization.* I would reach the same conclusion as we and the Court of Appeals, since governmental organizations are not described in section 501(c)(3). See sec. 170(c)(1) and (2). But that decision did not undertake to interpret the scope of our section 501(c)(3) jurisdiction.

Where, as in this case, a determination of exempt status under section 501(c)(3) is only a part of the story, and the nature or type of organization which has requested the ruling *is* significant, I conclude that we have the jurisdiction under section 7428(a)(1)(A) to make a complete determination. That this approach may require us to distinguish between a church and a church auxiliary or between a church and a hospital is simply responding to the underlying purpose of the Congress in its grant of declaratory judgment jurisdiction to this Court. This is the clear, direct, and understandable solution to the case at bar.

KORNER and COHEN, *JJ.,* agree with this concurring opinion.

---

SIMPSON, *J.,* dissenting in part: I agree with the majority's conclusion that we have jurisdiction in this case, but I must, with due respect, disagree with the conclusion

that the petitioner is a church. This Court recently embraced the "spiritual togetherness" definition of a church suggested by Judge Tannenwald in *Chapman v. Commissioner*, 48 T.C. 358, 367 (1967); in *Church of Eternal Life v. Commissioner*, 86 T.C. 916, 924 (1986), we defined a church as:

a coherent group of individuals and families that join together to accomplish the religious purposes of mutually held beliefs. In other words, a church's principal means of accomplishing its religious purposes must be to assemble regularly a group of individuals related by common worship and faith. * * *

In my opinion, that definition should be applied in this case, and this petitioner does not satisfy that definition.

Fortunately, we are not required to decide what constitutes a religion or a religious organization. The Commissioner concedes that this petitioner is a religious organization. We must decide merely whether this organization is a church, and to decide that issue, we must decide what characteristics distinguish a church from other types of religious organizations.

Churches receive more favorable tax treatment than any other exempt organizations. Under section 170(b)(1)(A), contributions to them are subject to the maximum deduction limitation; to qualify for the maximum deductions, other religious organizations are required to demonstrate that they receive substantial support from the general public. Sec. 170(b)(1)(A)(vi).

Religious organizations that are described in section 501(c)(3) are exempt from the income tax, but they are treated as private foundations unless they come within the exceptions described in section 509(a)(1), (2), (3), or (4). Private foundations are subject to certain excise taxes and stringent reporting and record-keeping requirements. However, a religious organization that is a church is exempted from such taxes and such requirements. In fact, although other religious organizations are required to give the Commissioner notice of their establishment, the Commissioner is prohibited by statute from requiring churches to give notice. Sec. 508(c)(1). In other words, the Commissioner has no authority to require any notices or reports from

churches. No other religious organization is granted such freedom from reporting and supervision.

There is no recorded legislative history explaining the reasons for the preferred treatment of churches. It has been suggested that churches are exempted from the reporting requirements in order to avoid the touchy subject of what constitutes a religion. *Church of the Visible Intelligence v. United States*, 4 Cl. Ct. 55, 64 (1983). However, the exemption from the reporting requirements applies only to churches, not to all religious organizations; therefore, an organization which seeks exemption from tax as a religious organization described in section 501(c)(3) may be required to demonstrate that its activities constitute a religion. Thus, the Commissioner and the courts may be required to pass judgment on whether the activities are religious.

The true explanation for the congressional deference to churches is more likely to be due, at least in part, to a belief that traditional churches do not require supervision by the Commissioner. A traditional church involves regular and frequent meetings of members of the community, and although a minister or other employees may be engaged to carry on the day-to-day administrative activities of the church, members of the community are generally active participants in the management and carrying on of the activities. The community is fully aware of all the activities of the church and can assure that those activities are carried on for public purposes. Consequently, in the case of a traditional church, there is no need for the Commissioner to require reports and to oversee the activities of the church.

It has been recognized that a church involves an associational activity. In *American Guidance Foundation v. United States*, 490 F. Supp. 304, 306 (D. D.C. 1980), affd. without opinion (D.C. Cir., July 10, 1982), the court said:

At a minimum, a church includes a body of believers or communicants that assembles regularly in order to worship. Unless the organization is reasonably available to the public in its conduct of worship, its educational instruction, and its promulgation of doctrine, it cannot fulfill this associational role.

The same test was adopted by the Claims Court in *Church of the Visible Intelligence v. United States*, 4 Cl. Ct. at 65.

This petitioner clearly carries on some associational activity, but is that activity sufficient to justify calling it a church.

In his concurrence in *Chapman*, Judge Tannenwald suggested that for an organization to be treated as a church, the associational activity had to be "the principal means" of carrying out its purposes, and in *Church of Eternal Life*, we declared that the associational activity had to be "the principal means" of accomplishing its religious purposes. If a religious organization engages extensively in activities not involving meetings of the community, there is no assurance that the community will participate in those other activities and no assurance that the community will be aware of those activities. Hence, unless the activities not involving the community are only incidental, the reasons for granting the organization full exemption from any reporting requirements do not exist. In my opinion, Congress meant to grant exemption from the reporting requirements only for those organizations that constitute traditional churches serving the community and controlled by the community.

The facts of this case show that this petitioner was not a traditional church. Although it conducted regular meetings for significant numbers of participants, it also sought to spread its beliefs through extensive radio and television activities. Those broadcasts were the principal means of spreading its beliefs; they were not merely broadcasts of services conducted for its members. Under these circumstances, I would hold that this petitioner is not a church for tax purposes.

STERRETT, *Chief Judge*, agrees with this dissent.

---

CHABOT, *J.*, dissenting: Both parties agree that petitioner is not "a private foundation (as defined in section 509(a))" (sec. 7428(a)(1)(B)). Both parties agree that this is so because petitioner is "an organization described in section 170(b)(1)(A) (other than in clauses (vii) and (viii))" (sec. 509(a)(1)). Respondent contends that this is so because petitioner is a publicly supported organization described in

section 170(b)(1)(A)(vi); petitioner contends this is so because it is a church described in section 170(b)(1)(A)(i). No deficiency has been determined that would be affected by the resolution of this limited dispute;[1] the dispute is before us solely by way of our declaratory judgment jurisdiction.

The majority hold that we have declaratory judgment jurisdiction to resolve this dispute. I would hold that we do not. I dissent.

## I. *Background*

Before 1974, the effect of the Anti-Injunction Act (sec. 7421(a) and its predecessors, dating back to 1867) and the Federal tax exception to the Declaratory Judgment Act (in 28 U.S.C. sec. 2201, the exception having been enacted in 1935, one year after the enactment of the Declaratory Judgment Act) was to preclude declaratory judgment proceedings in Federal tax cases. *Bob Jones University v. Simon*, 416 U.S. 725 (1974).

In the Employee Retirement Income Security Act of 1974 (sec. 1041(a) of Pub. L. 93-406, 88 Stat. 829, 949), the Congress enacted section 7476 to authorize the issuance of declaratory judgments to resolve certain types of retirement plan disputes. In the Tax Reform Act of 1976 (secs. 1306(a) and 1042(d)(1) of Pub. L. 94-455, 90 Stat. 1520, 1717, 1637), the Congress enacted sections 7428 and 7477 to authorize the issuance of declaratory judgments to resolve certain types of charitable organization disputes and section 367 disputes. In the Revenue Act of 1978 (sec. 336(a) of Pub. L. 95-600, 92 Stat. 2763, 2841), the Congress enacted section 7478 to authorize the issuance of declaratory judgments to resolve certain types of municipal bond disputes.

In sections 7476, 7477, and 7478, the Congress gave declaratory judgment jurisdiction only to the Tax Court; in section 7428, the Congress gave this jurisdiction to the Tax Court, the Court of Claims (now, the Claims Court), and the District Court for the District of Columbia. In sections 7428, 7476, and 7477, trial court determinations are reviewable in the same Courts of Appeals to which other cases

---

[1]Because of somewhat different rules under sec. 514(b)(3)(E), it is possible that this difference in status could affect a liability for unrelated business income tax. Another difference, in sec. 512(b)(14), applies only to years beginning before Jan. 1, 1976.

would go; in section 7478, trial court determinations are reviewable only by the Court of Appeals for the District of Columbia (sec. 7482(b)(3)). Each of these four declaratory judgment sections requires that there be "a case of actual controversy"; each then specifies what kind of controversy is a permissible declaratory judgment subject. Each of these four declaratory judgment sections specifies who may be a petitioner; in sections 7428 and 7478, there can be only one petitioner, while in sections 7476 and 7477 there are several potential petitioners as to any dispute. In sections 7476 and 7477, a petitioner is deemed to have not exhausted its administrative remedies before the expiration of 270 days after its request for determination; in section 7428, a petitioner is deemed to have exhausted its administrative remedies upon the expiration of 270 days; in section 7478, a petitioner is deemed to have exhausted its administrative remedies upon the expiration of 180 days.

Each of the following statutes dealt with at least one of the declaratory judgment sections: the Tax Reform Act of 1976 (amended sec. 7476; enacted secs. 7428 and 7477), the Revenue Act of 1978 (amended secs. 7476, 7428, and 7477; enacted sec. 7478), the Federal Courts Improvement Act of 1982 (amended sec. 7428), the Deficit Reduction Act of 1984 (amended secs. 7476 and 7428; repealed sec. 7477), and the Tax Reform Act of 1986 (corrected a typographical error in sec. 7476). From the foregoing, I conclude that—

(1) the Congress has not swept away the general prohibitions on declaratory judgments in Federal tax cases;

(2) the Congress has provided for declaratory judgments only to resolve the categories of disputes specifically set forth in the provisions enacted into law; and

(3) the Congress has fashioned each of these provisions with a view towards the specific problem or problems it was then addressing; although the Congress used one general format for all four sections, the content of each portion was tailored to the problems to be addressed by that particular section; when the Congress modified its views it modified accordingly the section involved, to the point of repealing one of the declaratory judgment sections 8 years after enacting it.

Since the general prohibition on declaratory judgments in Federal tax matters remains in the statute, it is particularly important that we adhere closely to the Congress' grant of jurisdiction in section 7428 as the Congress wrote section 7428.

## II. *Section 7428*

Section 7428(a)[2] authorizes this Court, the Claims Court, and the District Court for the District of Columbia to issue declaratory judgments under certain circumstances.

The statute requires that there be "a case of actual controversy involving—(1) a determination by the Secretary * * * or (2) a failure by the Secretary to make a determination." Each of the Internal Revenue Code declaratory judgment sections includes these specific requirements. Each of these sections then (i.e., after the words "a determination by the Secretary") lists what controversies are cognizable under the particular section. None of the controversies listed in section 7428 is present in the instant case. In particular—

(1) the parties agree that petitioner qualifies "as an organization described in section 501(c)(3) which is exempt from tax under section 501(a)" (sec. 7428(a)(1)(A));

(2) the parties agree that petitioner qualifies "as an organization described in section 170(c)(2)" (sec. 7428(a)(1)(A));

---

[2]SEC. 7428. DECLARATORY JUDGMENTS RELATING TO STATUS AND CLASSIFI-CATION OF ORGANIZATIONS UNDER SECTION 501(c)(3), ETC.

(a) CREATION OF REMEDY.—In a case of actual controversy involving—

(1) a determination by the Secretary—

(A) with respect to the initial qualification or continuing qualification of an organization as an organization described in section 501(c)(3) which is exempt from tax under section 501(a) or as an organization described in section 170(c)(2),

(B) with respect to the initial classification or continuing classification of an organization as a private foundation (as defined in section 509(a)), or

(C) with respect to the initial classification or continuing classification of an organization as a private operating foundation (as defined in section 4942(j)(3)), or

(2) a failure by the Secretary to make a determination with respect to an issue referred to in paragraph (1),

upon the filing of an appropriate pleading, the United States Tax Court, the United States Claims Court, or the district court of the United States for the District of Columbia may make a declaration with respect to such initial qualification or continuing qualification or with respect to such initial classification or continuing classification. Any such declaration shall have the force and effect of a decision of the Tax Court or a final judgment or decree of the district court or the Claims Court, as the case may be, and shall be reviewable as such. For purposes of this section, a determination with respect to a continuing qualification or continuing classification includes any revocation of or other change in a qualification or classification.

(3) the parties agree that petitioner is not "a private foundation (as defined in section 509(a))" (sec. 7428(a)(1)(B)); and

(4) it does not appear that either side contends that petitioner is "a private operating foundation (as defined in section 4942(j)(3))".

Thus, although there clearly is a controversy between the parties in the instant case, that controversy (whether petitioner is a church, within the meaning of section 170(b)(1)(A)(i)) is not one of the list of controversies that the Congress gave us jurisdiction to resolve under section 7428.

Ordinarily, that would be the end of the matter and we would dismiss the case for lack of jurisdiction.

### III. *Friends of the Society of God v. Commissioner*

Our precedents make it clear that, at times, the problem is more subtle. I agree with the majority that we can find useful guidance in our opinion in *Friends of the Society of God v. Commissioner*, 75 T.C. 209 (1980) (hereinafter sometimes referred to as *Friends*).

In *Friends*, the organization requested a ruling that it was tax-exempt as an organization described in section 501(c)(3), and also that it was not a private foundation because it was a church described in section 170(b)(1)(A)(i). The organization received a ruling that it was tax-exempt as an organization described in section 501(c)(3). The ruling also stated as follows (75 T.C. at 211):

Because you are a newly created organization, we are not now making a final determination of your foundation status under section 509(a) of the Code. However, we have determined that you can reasonably be expected to be a publicly supported organization described in sections 509(a)(1) and 170(b)(1)(A)(vi).

Accordingly, you will be treated as a publicly supported organization, and not as a private foundation, during an advance ruling period.

\*　　\*　　\*　　\*　　\*　　\*　　\*

If you do not meet the public support requirements during the advance ruling period, you will be classified as a private foundation for future periods. Also, if you are classified as a private foundation, you will be treated as a private foundation from the date of your inception for purposes of sections 507(d) and 4940.

We held that in Friends that we had jurisdiction to determine whether the organization was a church described in section 170(b)(1)(A)(i).

The majority herein conclude that "our opinion in Friends * * * is controlling as to our jurisdiction in the instant case." (See p. 1355) The majority conclude that our opinion in Friends leads to a conclusion that we have jurisdiction in the instant case. I agree that Friends gives us the answer to the jurisdictional question in the instant case. However, I respectfully suggest that the majority have missed the point of our opinion in Friends and, as a result, their conclusion is directly opposite to the one that Friends requires.

In Friends, we analyzed the basic dispute as follows (75 T.C. at 215):

The parties in this case differ in their interpretation of the scope of the review available. Petitioner points out that the statute by its terms confers jurisdiction in cases "involving (1) a determination by the Secretary * * * (B) with respect to the initial classification or continuing classification of an organization as a private foundation (as defined in section 509(a))." Petitioner contends that respondent's determination that it was not a church was made "with respect to" its initial classification as a private foundation. Stated generally, petitioner argues that the statute grants jurisdiction in all cases where the parties disagree about some aspect of a private ruling on an organization's private foundation or tax-exempt status. [Emphasis in original.]

From the foregoing, we derived the following rule (75 T.C. at 215-216) to apply to the facts in determining whether we have declaratory judgment jurisdiction:

We disagree for two reasons. First, section 7428(a) applies only "In a case of actual controversy." Therefore, the statute cannot apply unless the taxpayer has received an adverse ruling. Second, the statute confers jurisdiction only with respect to four subsections of the Code—subsections 170(c)(2), 501(c)(3), 509(a), and 4942(j)(3). Since these four sections are specifically enumerated, and declaratory judgments or injunctions are otherwise prohibited by section 7421(a) (Bob Jones University v. Simon, supra), it follows that the jurisdictional prerequisite for an action under section 7428(a) is an adverse determination under one of the four above-listed Code sections. See Ohio County & Independent Agricultural Societies, Delaware County Fair v. Commissioner, 610 F.2d 448 (6th Cir. 1979), affg. an order of this Court dated July 14, 1977 (docket No. 4811-77X), cert. denied 446 U.S. 965 (1980). Section 170(b)(1)(A) is not among the listed subsections. Thus, in the circumstances of this case,

petitioner may not ask for a declaratory judgment that it is a church under section 170(b)(1)(A)(i) *unless* qualification as a church has a direct bearing on petitioner's foundation status under section 509(a). [Emphasis in original.]

Applying this rule to the facts in *Friends*, we point out that, although the ruling appeared to be favorable in form, in substance it was an unfavorable ruling as to the organization's *nonprivate foundation status*. We noted that the ruling merely gave the organization a trial period to demonstrate public support under section 170(b)(1)(A)(vi) (75 T.C. at 216) and that the record in *Friends* suggested that the organization was not very likely to meet the public support requirements (75 T.C. at 217-219). Thus, the ruling that was issued was, as a practical matter, a ruling that the organization was (or shortly would be) a private foundation. We also noted that, if the organization were a church (sec. 170(b)(1)(A)(i)) then it would not have to meet the public support test, and would not be a private foundation. (75 T.C. at 219-220.) Thus, we concluded as follows (75 T.C. at 220):

In other words, petitioner's status as a church *directly affects* its qualification as a nonprivate foundation. In this context, petitioner's church status is a justiciable issue under section 7428(a)(1)(B), which authorizes a declaratory judgment determining whether or not petitioner is a private foundation. [Emphasis in original.]

Now, let us apply in the instant case the learning of *Friends*. In the instant case, respondent issued a definitive ruling, not merely an advance ruling. Also, our findings in the instant case do not suggest that petitioner has any difficulty in meeting the public support requirements. Accordingly (in contrast to the situation in *Friends*), the ruling petitioner received is favorable both in substance and form on the question of whether petitioner is a private foundation.

In *Friends*, we noted the fact that "the ruling letter imposes terms on [the organization's] foundation status which would not have been imposed upon a church." (75 T.C. at 217.) The majority point out (see p. 1355) that the same is true in the instant case. The majority in the instant case pass over the fact that, in *Friends*, the next 2½ pages of the opinion (75 T.C. at 217-220) explain why those

particular "terms" made a practical difference in that organization's ability to avoid private foundation status. In the instant case, the majority do not suggest that those "terms" make any difference at all in petitioner's ability to avoid private foundation status.

In *Friends*, we noted as follows (75 T.C. at 213):

If petitioner is a church, it * * * would also be entitled other benefits unrelated to section 501(c)(3) or 509(a), primarily the relief from having to file annual information returns granted under section 6033(a)(2)(A)(i).[7]

[7]See also secs. 410(c)(1)(B) and (d), 411(e)(1)(B), 412(h)(4), and 414(e); 508(c)(1)(A); 512(b)(14) and 514(b)(3)(E), 3309(b)(1); 5122(c); 6043(b)(1); and 7605(c).

In the instant case, the majority also note some collateral effects of church status (see p. 1353). Although those (or other) collateral effects may be the real reason why there is an "actual controversy", the mere existence of an actual controversy is not enough to give us jurisdiction. In *Friends* we held that the controversy must be one that "has a direct bearing" on the organization's qualification or classification under one or more of the four sections listed in section 7428(a)(1). (75 T.C. at 215-216.)

The approach of the majority in the instant case appears to be that we can resolve—in a declaratory judgment proceeding—any actual controversy about whether an organization is described in one rather than another of the first six clauses of section 170(b)(1)(A), even if that controversy is bottomed on collateral consequences instead of consequences affecting qualification or classification under one or more of the four sections listed in section 7428(a)(1). This approach would place before us many disputes that have nothing to do with the four sections listed in section 7428(a)(1). For example:

(1) The telephone excise tax provisions (secs. 4251 et seq.) include exemptions for hospitals "referred to in section 170(b)(1)(A)(iii)" (sec. 4253(b)) and educational organizations "described in section 170(b)(1)(A)(ii)" (sec. 4253(j)), but not for churches described in section 170(b)(1)(A)(i). If an organization receives a ruling that it is a church but not a hospital (or not an educational organization), then are we to take declaratory judgment jurisdiction because of the actual

controversy that is based primarily on liability for the telephone tax?[3]

(2) Section 403(b) provides for "tax-sheltered annuities" for employees of "an educational organization described in section 170(b)(1)(A)(ii)" (sec. 403(b)(1)(A)(ii)) if the annuities are bought by governmental employers. These annuities are not available for employees of other governmental institutions. All of these governmental institutions are described in section 170(b)(1)(A)(v), and so are section 509(a)(1) organizations, and so are not private foundations. If a governmental museum or a governmental hospital receives a ruling that it is a governmental unit, but it is not an educational organization, then are we to take declaratory judgment jurisdiction because of the actual controversy that is based primarily on availability of tax-sheltered annuities to employees?[4]

(3) Under prior law, gross income did not include any amount received "(A) as a scholarship at an educational organization described in section 170(b)(1)(A)(ii), or (B) as a fellowship grant" (sec. 117(a)(1)). The exclusion was available, respondent ruled (Rev. Rul 60-130, 1960-1 C.B. 46; Rev. Rul. 58-76, 1958-1 C.B. 56), for fellowship grants by the American Cancer Society and the American Heart Association, for nondegree research work. The Congress has modified section 117 so as to allow the exclusion only for "a candidate for a degree at an educational organization described in section 170(b)(1)(A)(ii) (sec. 117(a)). If a public charity grant-making organization[5] refuses to make grants for studies at organizations that are not described in section 170(b)(1)(A)(ii), then will we take jurisdiction over controversies as to whether the organization qualifies under that provision even though respondent agrees that it also qualifies under clause (i), (iii), (iv), (v), or (vi) of section 170(b)(1)(A)? If we go that far, will we then also be willing

[3]Published rulings attempting to define when an organization qualifies under sec. 170(b)(1)(A)(iii) (or under sec. 503(b)(5), as in effect before the Tax Reform Act of 1969), include the following: Rev. Rul. 76-9, 1976-1 C.B. 348; Rev. Rul. 75-295, 1975-2 C.B. 437; Rev. Rul. 73-131, 1973-1 C.B. 446.

[4]A published ruling dealing with the circumstances under which some activities of a private museum may be treated as an educational institution, although in a different context, appears as Rev. Rul. 76-167, 1976-1 C.B. 329.

[5]Private foundations are likely to have the same concerns. See secs. 4941(d)(2)(G)(ii) (relating to self-dealing by Government officials) and 4945(g)(1) (relating to individual grants as taxable expenditures).

to rule whether that organization issues "degrees" within the meaning of section 117?

The majority rely also on two sentences in *CREATE, Inc. v. Commissioner*, 634 F.2d 803 (5th Cir. 1981), affg. an unreported order of this Court. Respondent had ruled that CREATE was not a private foundation because it was a section 509(a)(3) organization and also because it was a section 509(a)(1) organization. Respondent ruled adversely to CREATE as to the treatment of certain contributions to it, but that adverse portion of the ruling did not affect CREATE's status as not being a private foundation. After affirming our order that we did not have declaratory judgment jurisdiction to consider the dispute as to the treatment of the contributions that were the subject of the adverse portion of the ruling, the Court of Appeals noted a "caveat", based on our opinion in *Friends* (634 F.2d at 812-813). If the Court of Appeals means that we can rule on other disputes where such rulings are necessary in order to decide one of the issues set forth in the statute, then I agree with the Court of Appeals' dictum. However, if the Court of Appeals contends that the statute gives us declaratory judgment jurisdiction to decide collateral questions merely because there are actual controversies as to those questions, then I respectfully suggest that the Court of Appeals' caveat is contrary to the statute.[6] We follow a Court of Appeals where that Court of Appeals has ruled in a manner that is clearly dispositive of the issue we face in the instant case, and the instant case is appealable to that Court of Appeals. *Golsen v. Commissioner*, 54 T.C. 742, 756-758 (1970), affd. 445 F.2d 985 (10th Cir. 1971). See, e.g., *David Metzger Trust v. Commissioner*, 76 T.C. 42, 72-74

---

[6]It is in this regard that I must respectfully disagree with Judge Williams' dissenting opinion because of his reliance on *Junaluska Assembly Housing, Inc. v. Commissioner*, 86 T.C. 1114 (1986). In *Junaluska*, the Court gave the above noted "caveat" in *CREATE, Inc. v. Commissioner*, 634 F.2d 803, 813 (5th Cir. 1981), a construction that is outside the statute. That is, the Court decided the question whether the organization in *Junaluska* was a church within the meaning of sec. 170(b)(1)(A)(i) for purposes of deciding whether that organization escaped private foundation status because of sec. 509(a)(1) rather than section 509(a)(3). In that sense, *Junaluska* is similar to the instant case in that we should have declined to take jurisdiction over that additional question since both sides agreed that the organization was not a private foundation pursuant to sec. 509(a).

Notwithstanding my disagreement with Judge Williams on this point, it is clear that under both approaches taken in these dissenting opinions, the majority's analysis in the instant case is incorrect. Thus, proper decision of the instant case does not turn on a reexamination of *Junaluska*.

(1981), affd. 693 F.2d 459 (5th Cir. 1982). The issue in the instant case has not been clearly disposed of by the Court of Appeals for the Fifth Circuit, and this case is not appealable to that Court of Appeals.

## IV. *Conclusion*

In sum, the opinion of this Court in *Friends* presented a careful analysis of the statute that the Congress chose to enact and explained why, in the setting of *Friends*, it became necessary for us to decide whether the organization was a church *but only* because that issue had to be resolved before we could decide the actual controversy as to whether the organization was a private foundation. In the instant case, there is no actual controversy as to whether petitioner is a private foundation. There is an actual controversy, but it is not as to any of the specific matters that the Congress addressed when it carved out exceptions to the prohibitions in the Declaratory Judgment Act (and, by implication, to the Anti-Injunction Act). Finally, decision of that issue would have no effect on any of the specific matters set forth in section 7428.

When we decide, in the instant case, whether petitioner is a church, we go beyond the jurisdiction that the Congress saw fit to grant us. I would not decide that question.

Respectfully, I dissent.

PARKER, *J.*, agrees with this dissent.

---

WILLIAMS, *J.*, dissenting: A plurality of this Court hold that section 7428(a)(1)(B)[1] grants jurisdiction to declare whether an organization is described in section 170(b)(1)(A).

---

[1]SEC. 7428. DECLARATORY JUDGMENTS RELATING TO STATUS AND CLASSIFI-
CATION OF ORGANIZATIONS UNDER SECTION 501(c)(3), ETC.

(a) CREATION OF REMEDY.—In a case of actual controversy involving—
    (1) a determination by the Secretary—

           *       *       *       *       *       *       *

        (B) with respect to the initial classification or continuing classification of an
    organization as a private foundation (as defined in section 509(a)), or

Judge Whitaker believes that section 7428(a)(1)(A)[2] grants jurisdiction to declare whether an organization described in section 501(c)(3) is a church. While Judge Whitaker's approach is direct and less susceptible of producing unforeseeable collateral harm, like the plurality opinion it reverses this Court's and others' consistent interpretations of section 7428.

The rule applicable here is a general bar against declaratory judgments in Federal tax matters. Sec. 7421(a); *Bob Jones University v. Simon*, 416 U.S. 725, 732 n. 7 (1974). It was in response to the Supreme Court's observation in *Bob Jones* that Congress had "imposed an especially harsh regime on section 501(c)(3) organizations threatened with loss of tax-exempt status" in forbidding injunctive or declaratory relief that Congress enacted section 7428. S. Rept. 94-938, at 586, 1976-3 C.B. (Vol. 3) 624. The Senate Finance Committee report states,

This provision is intended to facilitate relatively prompt judicial review of the specified types of exempt organization issues; it is not intended to supplant the normal avenues of judicial review (redetermination of a deficiency or suit for refund of taxes) where those normal procedures could be expected to provide opportunities for prompt determinations. * * * [S. Rept. 94-938, at 588, 1976-3 C.B. (Vol. 3) 626.]

Section 7428 was designed, not to supplant the normal deficiency/refund litigation routes, but to make relief available in three courts where the Government challenged the tax-exempt *status* of the organization. Specifically, this Court, the Claims Court, and the District Court for the District of Columbia were given jurisdiction to declare the proper status of an organization as (1) tax exempt (section 501(c)(3)), (2) a qualified recipient of deductible charitable contributions (section 170(c)(2)), (3) an organization that is not a private foundation (section 509(a)), or (4) an operating foundation (section 4942(j)(3)). These four categories are the "specified types of exempt organization issues" over which we have jurisdiction. None of them is at issue in this case.

---

[2]SEC. 7428(a). CREATION OF REMEDY.—In case of actual controversy involving—
(1) a determination by the Secretary—
(A) with respect to the initial qualification or continuing qualification of an organization as an organization described in section 501(c)(3) which is exempt from tax under section 501(a) or as an organization described in section 170(c)(2),

The plurality premise our jurisdiction on *Friends of the Society of Servants of God v. Commissioner*, 75 T.C. 209 (1980). I believe the plurality's reliance on that case is not only misplaced but without foundation. Indeed, the plurality would overrule *Friends*. Specifically, the plurality's opinion directly contradicts two principles of jurisdiction under section 7428, enunciated in *Friends*:

First, section 7428(a) applies only "In a case of actual controversy." Therefore, the statute cannot apply unless the taxpayer has received an adverse ruling. Second, the statute confers jurisdiction only with respect to four subsections of the Code—subsections 170(c)(2), 501(c)(3), 509(a), and 4942(j)(3). Since these four sections are specifically enumerated, and declaratory judgments or injunctions are otherwise prohibited by section 7421(a) (*Bob Jones University v. Simon, supra*), it follows that the jurisdictional prerequisite for an action under section 7428(a) is an adverse determination under one of the four above-listed Code sections. See *Ohio County & Independent Agricultural Societies, Delaware County Fair v. Commissioner*, 610 F.2d 448 (6th Cir. 1979), affg. an order of this Court dated July 14, 1977 (docket No. 4811-77X), cert. denied 446 U.S. 965 (1980). Section 170(b)(1)(A) is not among the listed subsections. Thus, in the circumstances of this case, petitioner may not ask for a declaratory judgment that it is a church under section 170(b)(1)(A)(i) *unless* qualification as a church has a direct bearing on petitioner's foundation status under section 509(a). [75 T.C. at 215-216.]

First, there is no adverse ruling in this case. Second, section 7428 does not grant this Court, or any other, the authority to declare the status of an organization under section 170(b)(1)(A) where classification under section 509(a) is not at issue. An organization's private foundation status is directly affected by whether it is classified under section 509(a)(1), section 509(a)(2), section 509(a)(3), or section 509(a)(4), and we have jurisdiction to give declaratory relief where the organization's classification under one or more of the four paragraphs of section 509(a) is at issue. *Junaluska Assembly Housing, Inc. v. Commissioner*, 86 T.C. 1114 (1986). Petitioner's classification is, however, not at issue. There is no actual controversy between the parties in this case with respect to petitioner's proper classification under section 509(a), and the Fifth Circuit has stated the rule applicable to this case, which I believe to be correct: this Court does not have jurisdiction to give declaratory relief that has no present effect on a taxpayer's classification under section 509(a). *CREATE, Inc. v. Commissioner*, 634

F.2d 803 (5th Cir. 1981). As in *CREATE, Inc.*, the parties both agree that petitioner is properly classified as an organization other than a private foundation pursuant to section 509(a)(1). Regardless of whether a determination is made with respect to petitioner's status as an organization described in section 170(b)(1)(A)(i) or section 170(b)(1)(A)(vi), petitioner's classification as an organization described in section 509(a)(1) will not change. Therefore, pursuant to section 7428, this Court does not have jurisdiction to hear this case.

In *CREATE, Inc.*, the Fifth Circuit did *not* state the exception crafted by the plurality, viz, where a petitioner receives "nonprivate foundation status, but upon a less advantageous *basis*" than the one requested, the Tax Court may entertain a suit (see p. 1352, emphasis added). In fact, the Fifth Circuit rejected the plurality's standard as a standard for exercising jurisdiction. What the Fifth Circuit stated was—

If taxpayers could seek review of a negative holding by the Service *on an alternative basis for classification as a nonprivate foundation*, even though the negative holding had no effect on the actual classification, it could give rise to a significant volume of sec. 7428 litigation, some of which would be needless. In this case, for example, such litigation would necessarily involve a future course of events which may never come to pass. We do not think that sec. 7428(a)(1) demands such an outcome. [634 F.2d at 812; emphasis added.]

The Fifth Circuit then enunciated what we later specifically held in *Junaluska*: "that the receipt of a favorable ruling on a *nonprivate foundation status* that is a different and less advantageous *status* * * * will not defeat jurisdiction." *CREATE, Inc. v. Commissioner*, 634 F.2d at 813 (emphasis added). *Junaluska Assembly Housing, Inc. v. Commissioner*, 86 T.C. at 1127.

Private foundation status is an issue determinable solely within the confines of section 509(a). The parties agree that petitioner's status is that it is not a private foundation pursuant to section 509(a)(1). That status is unaffected by any determination regarding the basis for its qualification as a section 170(b)(1)(A)(i) organization.

No authority supports the plurality's reach through section 509(a) to the underlying section 170(b)(1)(A) basis for

such status. In an analogous case under section 7428, the Sixth Circuit, affirming an unreported order of this Court, held that no case or controversy existed though an organization declared to be exempt under section 501(c)(3) also wanted to be declared a section 170(b)(1)(A)(v) organization so as not to be subject to the tax on unrelated business income. *Ohio County & Independent Agriculture Societies v. Commissioner*, 610 F.2d 448 (6th Cir. 1979). The Sixth Circuit refused to reach classification under section 170(b)(1)(A). The more favorable tax status sought, though the subject of a real dispute, was not within the purview of section 7428. Although the parties disputed the proper classification, it had no present effect on the organization's status under section 501(c)(3). See also *Eiry Trust v. Commissioner*, 77 T.C. 1263 (1981).

Judge Whitaker in effect looks behind respondent's section 501(c)(3) determination to declare not only that the organization is tax exempt as a religious organization but also that the organization is a church.[3] The plurality's opinion reaches the same result, but, instead of directly holding that we can declare an organization's church status under section 501(c)(3), the plurality strain section 509(a) to find our jurisdiction. The plurality have in effect incorporated sections 170(b)(1)(A)(i), (ii), (iii), (iv), (v), and (vi) into section 509(a)(1) notwithstanding that (a) some of these organizations are not section 501(c)(3) organizations (see, e.g., sec. 170(b)(1)(A)(v)), and therefore could not possibly be described in section 509, and (b) section 170(b)(1)(A) does not relate to the "specific types of exempt organization issues" addressed by Congress in the enactment of section 7428 but simply provides a 50-percent of adjusted gross income limitation on individuals' charitable contributions.

*Friends of the Society of Servants of God v. Commissioner, supra,* should be distinguished. In that case, petitioner requested a definitive ruling under section 509(a)(1) as a church within the meaning of section 170(b)(1)(A)(i). Respondent issued an advance ruling that petitioner was an organization that was not a private foundation under

---

[3] I would point out, however, that just as there is no controversy between the parties as to the organization's sec. 509(a)(1) status, there is no controversy between them as to the organization's sec. 501(c)(3) status.

section 509(a)(1) because he determined it to be an organization described in section 170(b)(1)(A)(vi). We held that the case presented an actual controversy because (a) respondent's ruling was not a definitive ruling, (b) his determination that petitioner was an organization described in section 170(b)(1)(A)(vi) was not supported by the record, and (c) the advance ruling imposed additional requirements on petitioner which it was not likely to satisfy.

In this case, none of the *Friends* factors are present. Petitioner has received a final favorable ruling from respondent that petitioner is an organization other than a private foundation under section 509(a)(1) as an organization described in section 170(b)(1)(A)(vi). Petitioner has operated as such for many years. There is no indication that respondent's determination that petitioner is not an organization described in section 170(b)(1)(A)(i) will result in petitioner's failure to continue to qualify under section 509(a)(1). Petitioner has failed to make the minimal showing that respondent's determination will have some present effect on its private foundation status.

The majority have extended our holding in *Friends of the Society of Servants of God* beyond the boundaries of the statute, in contravention of the well-settled principle that jurisdictional statutes are to be narrowly construed. See 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d, sec. 3522 (1984). The majority have opined on a matter not involving a "case of actual controversy."

HAMBLEN, SWIFT, JACOBS, WRIGHT, and WELLS, *JJ.*, agree with this dissent.